ACCEPTED
06-15-00045-cv
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/23/2015 5:27:46 PM
DEBBIE AUTREY
CLERK

**NO. 06-15-00045-CV**

IN THE COURT OF APPEALS
FOR THE SIXTH JUDICIAL DISTRICT
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/28/2015 9:13:00 AM
DEBBIE AUTREY
Clerk

**DUDLEY CONSTRUCTION, LTD., RICHARD MARK DUDLEY, AND HARTFORD FIRE INSURANCE COMPANY v. ACT PIPE & SUPPLY, INC.**

ON APPEAL FROM THE
361ST JUDICIAL DISTRICT COURT
BRAZOS COUNTY, TEXAS
CAUSE NO. 12-000281-CV-361

**APPELLANTS DUDLEY CONSTRUCTION, LTD., RICHARD MARK DUDLEY, AND HARTFORD FIRE INSURANCE COMPANY'S BRIEF**

THE SWEARINGEN LAW FIRM
ROBERT A. SWEARINGEN, P.C.

Robert A. Swearingen
State Bar Number 19563050
3002 Texas Avenue South
College Station, Texas 77845-5048
(979) 680-9993 ~ Telephone
(979) 680-9991 ~ Facsimile
robert@swearingenlaw.com

ATTORNEY FOR APPELLANTS
DUDLEY CONSTRUCTION, LTD., RICHARD
MARK DUDLEY, AND HARTFORD FIRE
INSURANCE COMPANY

**ORAL ARGUMENT REQUESTED**

# IDENTITY AND PARTIES OF COUNSEL

PARTIES                                    COUNSEL

*Appellants*

Dudley Construction, Ltd.                  Robert A. Swearingen,
Richard Mark Dudley                        SBN 19563050
THE SWEARINGEN LAW FIRM                     ROBERT A. SWEARINGEN, P.C.
Hartford Fire Insurance Company            3002 Texas Avenue South
                                           College Station, Texas 77845-5048
                                           (979) 680-9993 ~ Telephone
                                           (979) 680-9991 ~ Facsimile
                                           robert@swearingenlaw.com


*Appellee*

ACT Pipe & Supply, Inc.                    Lisa M. Norman
                                           W. Jason Walker
                                           ANDREWS MYERS, P.C.
                                           3900 Essex Lane, Suite 800
                                           Houston, Texas 77027
                                            lnorman@andrewsmyers.com
                                           jwalker@andrewsmyers.com



*Other Parties in Trial*

R.M. Dudley Construction, Inc.,            Robert A. Swearingen
     now known as                          SBN 19563050
        Dudley Construction Management      THE SWEARINGEN LAW FIRM
           Services, Ltd.                   ROBERT A. SWEARINGEN, P.C.
R.M. Dudley Holdings 2, L.L.C.             3002 Texas Avenue South
R.M. Dudley Holdings, L.L.C.               College Station, Texas 77845-5048
                                           (979) 680-9993 ~ Telephone
                                           (979) 680-9991 ~ Facsimile
                                           robert@swearingenlaw.com

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**INDEX OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ISSUES PRESENTED FOR REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**SUMMARY OF THE ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Issue One:      The trial court erred by granting JNOV on ACT's suit on sworn account on the Tabor Road Project. . . . . . . . . . . . . . . . . . . . 13

Issue Two:      The trial court erred by granting JNOV on ACT's Misapplication of Trust Funds Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Issue Three:    The evidence is legally and factually insufficient to support the jury's answers that ACT Pipe & Supply, Inc. perfected its bond claim as to Dudley Construction, Ltd. and Hartford Fire Insurance Company on the Reclaimed Water Project and Tabor Road Project. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Issue Four:     The trial court erred to the extent that it based its award against Dudley Construction, Ltd. and Hartford Fire Insurance Company on ACT's payment bond claim. . . . . . . . . . . . . . . . . . . . . . . . 23

Issue Five:     The trial court erred by awarding attorney fees to ACT. . . . . 23

Issue Six:        The trial court erred by awarding ACT the entire amount of attorney's fees requested by ACT because ACT did not segregate its attorney's fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Issue Seven:    The evidence is legally and factually insufficient to support the amount of attorney's fees awarded because they were not reasonable or necessary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Issue Eight:    The trial court erred by failing to file requested findings of fact and conclusions of law.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Issue Nine:    The trial court erred by directing a verdict and refusing to submit jury questions on Dudley Construction, Ltd.'s fraud claim.. . 41

**PRAYER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**APPENDIX** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

# INDEX OF AUTHORITIES

**Cases**

*A.D. Willis Co., Inc./Metal Bldg. Components, Inc. v. Metal Bldg. Components, Inc.*, 2000 WL 1508500 (Tex. App.–Austin 2000, pet. denied).. . . . . . . . . . . . . 33

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768 (Tex. 2009).. . . . . 41

*Arthur Anderson & Company v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001).. . . . . . . . . . . . . . . . . . . . . . . . 17

*Bluebonnet Exp., Inc. v. Employers Ins. of Wausau*, 651 S.W.2d 345 (Tex. App.–Houston [14th Dist.] 1983, writ ref'd n.r.e.).. . . . . . . . . . . . . . . . . . . . . 14

*Cherne Indus. v. Magallanes*, 763 S.W.2d 768 (Tex 1989).. . . . . . . . . . . . . . . 40

*Chilton Ins. Co. v. Pate Enterprises, Inc.*, 930 S.W.2d 877, 886 (Tex. App.–San Antonio 1996, writ denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005).. . . . . . . . . . . . . . . . . . . 44

*Croucher v. Croucher*, 660 S.W.2d 55 (Tex. 1983).. . . . . . . . . . . . . . 22, 27, 30, 39

*Epps v. Fowler*, 351 S.W.3d 862 (Tex.2011).. . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194 (Tex. 2011).. . . . . . . . 41

*Fleming & Associates, L.L.P. v. Barton*, 425 S.W.3d 560 (Tex. App.–Houston [14th Dist.] 2014, review denied, rehearing on petition for review denied).. . . . . . . . . . 26

*Formosa Plastics Corp. USA v. Presidio Engineers & Constractors, Inc.*, 960 S.W.2d 41 (Tex. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392 (Tex. 1991).. 15, 16, 18

*Ganz v. Lyons Partnership, L.P.*, 173 F.R.D. 173 (N.D. Texas, Dallas Division 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965).. . . . . . . . . . . . . . . . . 22, 28, 30, 39

*Garza v. Cantu,* 431 S.W.3d 96 (Tex. App.–Houston 2013, pet. denied).. . . . . . 19

*Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261 (Tex. 2014).. . . . 21, 27, 29, 38

*Green Intern., Inc. v. Solis*, 951 S.W.2d 384 (Tex. 1997).. . . . . . . . . . . . . . . . . . 35

*Hermann Hosp. v. Vardemann*, 775 S.W.2d 866 (Tex. App.–Houston [1ˢᵗ Dist.] 1989, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89 (Tex. App.–El Paso 1997, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*HMC Hotel Props, II L.P. v. Keystone-Tex Prop. Holding Corp.*, 439 S.W.3d 910 (Tex. 2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 27, 30, 38

*Hoffman v. L&M Arts*, 2015 WL 1000838 (N.D. Texas, Dallas Division 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440 (Tex. 1997).. . . . . . . . . . . . . . . . 40

*Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323 (Tex. 2011).. . 41, 42

*Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998).. . . . 43

*Jones v. Ben Maines Air Conditioning, Inc.*, 621 S.W.2d 437 (Tex. Civ. App.–Texarkana 1981, no writ).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Larrison v. Catalina Design*, 2011 WL 582730 (Tex. App.–Fort Worth 2011, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Larry F. Smith Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611 (Tex. App.–Dallas 2003, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Liberty Mut. Fire Ins. v. Laca*, 243 S.W.3d 791
(Tex. App.–El Paso 2007, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Lindley v. McKnight*, 349 S.W.3d 113 (Tex. App-Fort Worth 2011, no pet.).. . . 35

*Neuro-Developmental Associates of Houston v. Corporate Pines Realty Corp.*, 908
S.W.2d 26 (Tex. App.–Houston [1st Dist.] 1995, pet. denied).. . . . . . . . . . . . . . 44

*Osterberg v. Peca*, 12 S.W.3d 31, 54 (Tex. 2000).. . . . . . . . . . . . . . . . . . . . . . 17

*Regal Finance Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595
(Tex. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Senegal v. Payne*, 2015 WL 4053504 (Tex. App.-Beaumont 2015, no pet.).. . . . 18

*Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545 (Tex. 2009).. . . . . . . . . . . . . 37

*Southwestern Bell Telephone Co. v. Garza*, 164 S.W.3d 607 (Tex. 2004).. . . . . 17

*Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154 (Tex. 1994).. . . . . 16

*Tanner v. Nationwide Mut. Fire Ins.*, 289 S.W.3d 828 (Tex. 2009).. . . . . . . . 15, 16

*Trenholm v. Ratcliff*, 646 S.W.2d 927 (Tex. 1983).. . . . . . . . . . . . . . . . . . . . . 42

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006).. . . . . . . . 35, 36

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001).. . . . . . . . . . . . . 17

*Young v. Qualls*, 223 S.W.3d 312 (Tex. 2007).. . . . . . . . . . . . . . . . . . . . . . . . 37

**Statutes**
Texas Business Organizations Code §5.055.. . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Texas Civil Practice & Remedies Code §38.001.. . . . 11, 24, 25, 26, 27, 28, 30, 31

Texas Civil Practice & Remedies Code §38.002.. . . . . . . . . . . 12, 28, 29, 30, 31

Texas Government Code §2253.041.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Texas Government Code §2253.044.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Texas Government Code §2253.074.. . . . . . . . . . . . . . . . . . . . . . . . . .  12, 32, 33

Texas Property Code §162.001.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**Trial Rules, Appellate Rules, and Rules of Evidence**

Texas Rule of Civil Procedure §296.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 40

Texas Rule of Civil Procedure §297.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 40

Texas Rule of Civil Procedure §301.. . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

**Texas Pattern Jury Charges**

Texas Pattern Jury Charges–Business, Consumer, Insurance, & Employment (2014)

100.12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

105.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

105.3.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

115.20.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## STATEMENT OF THE CASE

Plaintiff/Appellee ACT Pipe & Supply, Inc. (hereinafter "ACT") sued Defendants/Appellants Dudley Construction, Ltd., Richard Mark Dudley, and Hartford Fire Insurance Company (hereinafter collectively referred to as "Appellants") and Defendants R.M. Dudley Construction, Inc., R.M. Dudley Holdings, L.L.C., R.M. Dudley Holdings 2, L.L.C. for suit on sworn account, payment bond claim, prompt payment act, misapplication of trust funds, fraud and misrepresentation, and alter ego. CR 913-1002. Dudley Construction, Ltd. asserted counter-claims for breach of contract and fraud against ACT. CR 423-427. After a jury trial, the trial court directed a verdict for Defendants R.M. Dudley Construction, Inc., and R.M. Dudley Holdings, L.L.C., R.M. Dudley Holdings 2, L.L.C. CR 1150-1154; 2 Supp. CR 7-36, 42-66. The jury made various findings. 2 Supp. CR 42-66. The trial court adopted some of those findings but granted a judgment notwithstanding the verdict in favor of ACT on others. 2 Supp. CR 42-66; CR 1150-1154. The issue of attorney's fees was tried to the bench, and the trial court's award of attorney's fees to ACT was included in the judgment. CR 1033, 1150-1154. The trial court denied Appellants' motion for new trial. CR 1159-1172; CR 1175.

1

## ISSUES PRESENTED FOR REVIEW

Issue One:        The trial court erred by granting JNOV on ACT's suit on sworn account on the Tabor Road Project.

Issue Two:        The trial court erred by granting JNOV on ACT's Misapplication of Trust Funds Claim.

Issue Three:        The evidence is legally and factually insufficient to support the jury's answers that ACT Pipe & Supply, Inc. perfected its bond claim as to Dudley Construction, Ltd. and Hartford Fire Insurance Company on the Reclaimed Water Project and Tabor Road Project.

Issue Four:        The trial court erred to the extent that it based its award against Dudley Construction, Ltd. and Hartford Fire Insurance Company on ACT's payment bond claim.

Issue Five:        The trial court erred by awarding attorney fees to ACT.

Issue Six:        The trial court erred by awarding ACT the entire amount of attorney's fees requested by ACT because ACT did not segregate its attorney's fees.

Issue Seven:        The evidence is legally and factually insufficient to support the amount of attorney's fees awarded because they were not reasonable or necessary.

Issue Eight:        The trial court erred by failing to file requested findings of fact and conclusions of law.

Issue Nine:        The trial court erred by directing a verdict and refusing to submit jury questions on Dudley Construction, Ltd.'s fraud claim.

2

**STATEMENT OF FACTS**

Dudley Construction, Ltd. was the general contractor on the Tabor-16th St. & N Texas GW Storage Tanks (5 MG Site) project for the City of Bryan (hereinafter referred to as the "Tabor Road Project"). D. Ex. 1. ACT provided a bid to Dudley Construction, Ltd. to provide materials for the Tabor Road Project. 6 RR 48; D. Ex. 2. ACT's initial bid was too high. 6 RR 59. ACT provided a bid with lower prices to Dudley Construction, Ltd. 6 RR 59; P. Ex. 18. Thereafter, ACT issued a purchase order to the manufacturer for push-on or slip joint pipe. 6 RR 59-60; (push-on pipe and slip joint pipe are different terms for the same thing and that type of pipe will be referred to hereafter as "slip joint pipe." 6 RR 62). The bid price provided by ACT to Dudley Construction, Ltd. was based upon the provision of slip joint pipe. 6 RR 60, 74. Mark Stroud, the employee of ACT that provided the estimate for the Tabor Road Project, determined that concrete blocking was the restraint mechanism that was required by the City of Bryan on that Project. 6 RR 48, 61-62. The prices provided by ACT were therefore based on the use of concrete blocking as the restraining mechanism. 6 RR 62.

Dudley Construction, Ltd. requested submittals from ACT. 6 RR 63. Submittals provide the general information of the product that is being supplied. 6 RR 64. The purpose of a submittal is to make sure that the City of Bryan is going to

3

approve of the supply that is about to be put in their system and to make sure everyone is on the same page. 6 RR 88.

ACT provided submittals for slip joint pipe. 6 RR 64. The submittal for slip joint pipe was rejected by the City of Bryan because the City of Bryan wanted restrained joint pipe. 6 RR 64; 6 RR 85; D. Ex. 13. Mark Stroud provided another submittal with restrained joint pipe. 6 RR 65; 6 RR 86. This resubmittal was approved by the City of Bryan. 6 RR 65; D. Ex. 14.

After Dudley Construction, Ltd. informed Mark Stroud that it was ready for the pipe to be delivered, Mark Stroud contacted the pipe manufacturer for shipment of the restrained joint pipe. 6 RR 66-67. However, the pipe that was shipped to the job site was the previously rejected slip joint pipe. 6 RR 64, 67; D. Ex. 13.

About a week after the previously rejected slip joint pipe was delivered, Mark Stroud received an email from Dudley Construction, Ltd. stating that it was believed that the delivered pipe was not properly ordered because it wasn't the restrained joint pipe. 6 RR 70; D. Ex. 26. Even though restrained joint pipe is more expensive than slip joint pipe, Mark Stroud told Dudley Construction, Ltd. that he would obtain the restrained joint pipe. 6 RR 73. Mark Stroud made numerous statements to Dudley Construction, Ltd. that delivery of the restrained joint pipe was imminent. 7 RR 134-139; D. Ex. 15-23; 7 RR 234. Mark Stroud received numerous follow-up emails from

4

Dudley Construction, Ltd. regarding delivery of the restrained joint pipe and did not inform Dudley Construction, Ltd. that it in fact had not been ordered. 7 RR 134-139; D. Ex. 15-23.

Eventually, Mark Stroud involved his supervisor, Curt Murray. 6 RR 74. Mr. Murray determined that the plans and specifications actually did not require restrained joint pipe and that the pipe that was delivered was the pipe that was specified in the plans and specifications for the job. 6 RR 75. Mr. Murray sent Dudley Construction, Ltd. an email explaining ACT's position. P. Ex. 23; 7 RR 40. ACT was first notified on April 26, 2011 that the pipe that was delivered was rejected by the City of Bryan, and ACT did not provide an argument that the pipe that was delivered was the type of pipe called for in the plans until July 6, 2011. P. Ex. 23; D. Ex. 26. ACT had instead been promising delivery of the approved restrained joint pipe, and Dudley Construction, Ltd., relying on those promises, told the City of Bryan that restrained joint pipe was going to be delivered. 7 RR 134-139; D. Ex. 15-23; 7 RR 233-234.

Upon receipt of ACT's email stating its position that the pipe that had been delivered was the type called for in the plans and specifications, Richard Mark Dudley lobbied the City of Bryan to use the delivered slip joint pipe. 7 RR 223; P. Ex. 23; P. Ex. 32. Those discussions with the City of Bryan to use that delivered slip joint pipe went from July 6, 2011 to September 21, 2011. 7 RR 223. Richard Mark Dudley

5

sought further information and argument from Curt Murray to convince the City of Bryan that the delivered pipe was the type called for in the plans and specifications, but Curt Murray was unresponsive to those requests. 7 RR 224-227.

Eventually, the pipe that was delivered was ultimately used on the Tabor Road Project, but subject to the use of externally restrained joints. 6 RR 81; 7 RR 74; 7 RR 229. Concrete blocking as figured by ACT was not used. 7 RR 74; 6 RR 62. Dudley Construction, Ltd. had to hire and pay for an engineer for the delivered pipe to be used. 7 RR 75-76. The pipe issue caused delays on the Tabor Road Project. 7 RR 160.

While the debate regarding the pipe was ongoing, Dudley Construction, Ltd. and ACT entered into a Purchase Order agreement. D. Ex. 3 (12 RR 16); 7 RR 54, 92, 245. The Purchase Order was the only signed contract on the Tabor Road Project. D. Ex. 3. However, ACT kept sending invoices with prices that did not conform to the prices provided for in the Purchase Order. D. Ex. 3; 7 RR 245; 7 RR 33-34; P. Ex. 37; P. Ex. 4. ACT and Dudley also disagreed on various credits and other prices charged on various invoices submitted by ACT. D. Ex. 6-12; 7 RR 173-180.

Dudley Construction, Ltd. was also the general contractor on the Water Reclamation Phase I Project for the City of College Station (hereinafter referred to as the "Reclaimed Water Project"). P. Ex. 15 (12 RR 110). ACT and Dudley disagreed

6

on various credits and other prices charged on various invoices submitted by ACT on that project as well.  D. Ex. 28; D. Ex. 5; 7 RR 170-172.

Despite offers by Dudley Construction, Ltd. to pay invoices if the prices were corrected, ACT instead filed suit against R.M. Dudley Construction, Inc., R.M. Dudley Holdings 2, LLC, and Hartford Fire Insurance Company.  CR 5-87.  R.M. Dudley Construction, Inc. and R.M. Dudley Holdings 2, LLC filed general denials and verified denials, asserting, among other things, that they were not the correct construction companies to be sued.  CR 88-94;  7 RR 245; 6 RR 136; See also 9 RR 101 (that statement was excluded from the jury trial, but the trial court heard it).  ACT filed its First Amended Original Petition adding Richard Mark Dudley, Dudley Construction, Ltd., and R.M. Dudley Holdings, LLC to the suit.  CR 95-201. Richard Mark Dudley filed a general denial.  CR 289-294.  Dudley Construction, Ltd. and R.M. Dudley Holdings, LLC filed general denials and verified denials disputing the amounts alleged by ACT.  CR 295-301.  Dudley Construction, Ltd. asserted counter-claims for breach of contract and fraud against ACT.  CR 423-427.  ACT filed a Second Amended Original Petition adding additional causes of action.  CR 913-1002. ACT's Second Amended Original Petition asserted claims of suit on sworn account and Prompt Pay Act against R.M. Dudley Construction, Inc. and Dudley Construction, Ltd, claims of fraud and misapplication of trust funds against R.M. Dudley

7

Construction, Inc., Dudley Construction, Ltd., and Richard Mark Dudley, and payment bond claims against R.M. Dudley Construction, Inc., Dudley Construction, Ltd., and Hartford Fire Insurance Company. CR 913-1002. ACT also claimed R.M. Dudley Construction, Inc., Dudley Construction, Ltd., RM Dudley Holdings, LLC, and RM Dudley Holdings 2, LLC were alter egos of each other. CR 913-1002. ACT sought $143,714.79 in damages–$19,642.82 for the Reclaimed Water Project and $124,071.97 for the Tabor Road Project. CR 913-1002; CR 931; CR 932.

On November 17, 2014, the case went to trial. 12 RR 1. Before the case was submitted to the jury, the trial court directed a verdict on all of ACT's claims against R.M. Dudley Construction, Inc., R.M. Dudley Holdings, LLC, and R.M. Dudley Holdings 2, LLC. CR 1150-1154; 2 Supp. CR 7-36, 42-66. The trial court also directed a verdict against ACT on ACT's fraud claims and alter ego claims. CR 1150-1154; 2 Supp. CR 7-36, 42-66. The trial court directed a verdict against Dudley Construction, Ltd. on its fraud claim. CR 1150-1154; 2 Supp. CR 42-66; 2 Supp. 37-41. Attorney's fees were to be submitted to the trial court. CR 1033. The remaining issues were submitted to the jury. 2 Supp. CR 42-66. The jury provided answers to the trial court's charge. 2 Supp. CR 42-66. The jury found that ACT should recover on its sworn account claim on the Reclaimed Water Project in the amount of $14,214.20, not the $19,642.82 demanded by ACT. 2 Supp. CR 52; CR 913-1002.

8

The jury found that the prices charged by ACT on the Tabor Road Project were not in accordance with the parties' agreement by their clear answer of "No" to that inquiry. 2 Supp. CR 50. The jury rejected ACT's Prompt Payment Act claim. 2 Supp. CR 53. The jury found that ACT perfected its payment bond claims in the amount of $14,214.20 as to the Reclaimed Water Project and $110,629.70 on the Tabor Road Project, not the $124,071.97 demanded by ACT. 2 Supp. CR 56-57; CR 913-1002. The jury found no damages on ACT's misapplication of trust fund claim. 2 Supp. CR 63. The jury also found that ACT failed to comply with an agreement with Dudley Construction, Ltd., but that such failure to comply was excused. 2 Supp. CR 64-65.

ACT filed a motion to disregard some of the jury's answers, and the trial court granted that motion. CR 1026-1139; CR 1150-1154. The trial court granted a judgment notwithstanding the verdict ("JNOV") on ACT's suit on sworn account claim on the Tabor Road Project and found that the evidence conclusively proved that the prices charged by ACT were in accordance with the parties' agreement and disregarded the jury's answer that they were not. CR 1152. The trial court also granted a JNOV on ACT's misapplication of trust fund claim. CR 1152. The trial court found that damages were uncontroverted and conclusively proven in the amount of $14,214.20 for the Reclaimed Water Project and $110,629.70 for the Tabor Road

9

Project, and the Court substituted those amounts for the jury's answer of zero damages. CR 1152.

The trial court entered a final judgment against Dudley Construction, Ltd., Richard Mark Dudley, and Hartford Fire Insurance Company and for ACT in the amount of $124,483.90. The trial court also awarded ACT its attorney's fees in the amount of $131,823.99.

Appellants timely filed requests for findings of fact and conclusions of law, notice of past due findings of fact and conclusions of law, and a motion for new trial. CR 1155-1156; CR 1173-1174; CR 1159-1172. Appellants timely filed their notice of appeal. CR 1195-1196.

## SUMMARY OF THE ARGUMENT

The trial court erred by granting a JNOV on ACT's suit on sworn account claim on the Tabor Road Project. The jury correctly found that ACT did not prove that the prices ACT charged on the Tabor Road Project were in accordance with the agreement between ACT and Dudley Construction, Ltd., and the trial court improperly disregarded the jury's answer.

The trial court erred by granting a JNOV disregarding the jury's proper award of zero damages and imposing damages of $110,629.70 for the Tabor Road Project and $14,214.20 for the Reclaimed Water Project on ACT's Misapplication of Trust

10

Funds claim against Dudley Construction, Ltd. and Richard Mark Dudley. The evidence supports the jury's findings, and, assuming arguendo that the evidence did not, the trial court erred by determining the amount of damages. A court is not authorized to substitute its judgment and replace the jury's assessment of the amount of money necessary to reasonably compensate the plaintiff for its injuries when the amount of damages are disputed.

The jury's finding that ACT perfected its bond claim on the Reclaimed Water Project and Tabor Road Project is not supported by the evidence because ACT only provided one required written notice to Dudley Construction, Ltd. and that one notice was defective because it did not contain a sworn statement of account.

Even if ACT did perfect its payment bond claims, to the extent that the trial court found that ACT's payment bond claim created an independent entitlement for ACT to receive payment, the trial court committed error because payment bond claims do not create an independent entitlement to receive payment.

The trial court erred by awarding attorney's fees to ACT. ACT cannot recover attorney's fees under §38.001 of the Texas Civil Practice & Remedies Code against Richard Mark Dudley and the Hartford Fire Insurance Company because the pleadings and the evidence do not support that claim. ACT cannot recover against Dudley Construction, Ltd. because Dudley Construction, Ltd. is a limited partnership, not an

11

individual or corporation as required for recovery under the statute. ACT also did not provide the demand letters required by Texas Civil Practice & Remedies Code §38.002. ACT cannot recover attorney's fees under the provisions of a contract because the signed agreement between ACT and Dudley Construction, Ltd. is silent as to attorney's fees. There is no contract between ACT and Hartford Fire Insurance Company or Richard Mark Dudley. Recovery of attorney's fees under a Payment Bond Claim pursuant to Texas Government Code Chapter 2253.074 is only applicable to recovery of fees against sureties. The pleadings do not support any award of attorney's fees on ACT's misapplication of trust fund claim, and if they did, attorney's fees cannot be recovered on a misapplication of trust fund claim. Finally, to the extent that this Court sustains Appellants' points of error on ACT's causes of action, ACT cannot recover attorney's fees on those causes of action.

The trial court erred by awarding ACT the entire amount of attorney's fees requested by ACT because ACT did not segregate its attorney's fees.

The trial court erred by awarding ACT the entire amount of attorney's fees requested by ACT because such amount was not reasonable or necessary.

The trial court erred because it failed to file requested findings of fact and conclusions of law. Appellants were harmed because they were forced to attack all the possible grounds supporting the judgment instead of the grounds actually found

12

by the trial court.

The trial court erred by directing a verdict and refusing to submit jury questions on Dudley Construction, Ltd.'s fraud claim because there was evidence to submit Dudley Construction, Ltd.'s cause of action for fraud to the jury.

## ARGUMENT

**Issue One:   The trial court erred by granting JNOV on ACT's suit on sworn account on the Tabor Road Project**.

The trial court erred by granting a JNOV on ACT's suit on sworn account claim on the Tabor Road Project.  CR 1152.  The jury correctly found that ACT did not prove that the prices ACT charged on the Tabor Road Project were in accordance with the agreement between ACT and Dudley Construction, Ltd. 2 Supp. CR 50.  The trial court improperly disregarded the jury's answer.  CR 1152.

The essential elements of a common law cause of action on sworn account are (1) a sale and delivery of the merchandise; (2) that the amount of the account is just, that is, that the prices are charged in accordance with an agreement or in the absence of an agreement, that they are the usual customary and reasonable prices for that merchandise; and, (3) that the amount is unpaid.  *Jones v. Ben Maines Air Conditioning, Inc.*, 621 S.W.2d 437, 439 (Tex. Civ. App.–Texarkana 1981, no writ). Therefore, to prevail on its claim of suit on sworn account, the prices charged by ACT must have been in accordance with the express contract between the parties.

13

*Bluebonnet Exp., Inc. v. Employers Ins. of Wausau*, 651 S.W.2d 345, 353-354 (Tex. App.–Houston [14th Dist.] 1983, writ ref'd n.r.e.).

The jury correctly found that ACT did not prove that the prices ACT charged were in accordance with the agreement between ACT and Dudley Construction, Ltd. 2 Supp. CR 50. The amount ACT claimed was unpaid for the Tabor Road Project was $124,071.97. CR 932; 7 RR 33-34; P. Ex. 37; P. Ex. 4. ACT based its claim for that amount on a unit price for 36" DI pipe of $109.71 per foot and a unit price for 30" DI pipe of $82.00 per foot. P. Ex. 4 (12 RR 26-27). Those prices were never agreed to. 6 RR 59. The proper prices for that pipe were contained in the signed Purchase Order agreement. D. Ex. 3; 7 RR 54, 92, 245. The unit price for 36" DI pipe in that Purchase Order was $95.00 per foot, and the unit price for 30" DI pipe was $74.53 per foot. D. Ex. 3; 6 RR 99. The Purchase Order was the only signed contract in this case. D. Ex. 3. ACT could not provide any evidence as to why the higher pipe prices were used versus those in the signed Purchase Order.[1]

The trial court erred by granting JNOV because the evidence set forth above supports the jury's finding that the prices were not charged in accordance with the

---

[1]ACT alleged that the prices were adjusted to make up some credit that was given on the College Station Reclaimed Water Project. 6 RR 101. However, nowhere in the documentation of the College Station Reclaimed Water Project does it show that some form of credit was given to Dudley Construction, Ltd. 6 RR 105. ACT could not explain where the alleged credit appeared. 7 RR 66-67. ACT could not provide the amount of the alleged credit. 6 RR 124; 7 RR 64, 67, 70.

14

agreement between ACT and Dudley Construction, Ltd. A JNOV is only proper when a directed verdict would have been proper. Tex. R. Civ. P. 301; *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). A JNOV is reviewed under a no-evidence standard, meaning that the Court is to credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins.*, 289 S.W.3d 828, 830 (Tex. 2009). The Court must uphold the jury's finding if more than a scintilla of competent evidence supports it. *Id.* The evidence did not conclusively prove that the prices charged by ACT were in accord with the express contract between the parties, and a reasonable jury was free to think that they were not. *Id.*

The prices charged by ACT were not in accord with the express contract between the parties–the signed Purchase Order. 7 RR 173. ACT therefore failed to prove all of the elements on its suit on sworn account on the Tabor Road Project. The jury's finding that ACT did not prove that the prices ACT charged on the Tabor Road Project were in accordance with the agreement between ACT and Dudley Construction, Ltd. was correct. 2 Supp. CR 50. The trial court erred by disregarding that finding of the jury and changing the jury's "No" answer to "Yes." 2 Supp. CR 50; CR 1152. To the extent the trial court then used the later answer of $110,629.70, the trial court committed error in that the jury was instructed not to answer that

15

question. 2 Supp. CR 50-52; See *Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154, 157 (Tex. 1994)(a question is immaterial when it has been rendered immaterial by other findings).

**Issue Two:  The trial court erred by granting JNOV on ACT's Misapplication of Trust Funds Claim**

The trial court erred by granting a JNOV disregarding the jury's proper award of zero damages and imposing damages of $110,629.70 for the Tabor Road Project and $14,214.20 for the Reclaimed Water Project on ACT's Misapplication of Trust Funds claim against Dudley Construction, Ltd. and Richard Mark Dudley. 2 Supp. CR 63; CR 1152. The evidence supports the jury's findings, and, assuming arguendo that the evidence did not, the trial court erred by determining the amount of damages.

*A.      The evidence supports the jury's finding of zero damages.*

A JNOV is only proper when a directed verdict would have been proper. Tex. R. Civ. P. 301; *Fort Bend Cty. Drainage Dist.* 818 S.W.2d at 394. A JNOV is reviewed under a no-evidence standard, meaning that the Court is to credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not*. Tanner,* 289 S.W.3d at 830. The Court must uphold the jury's finding if more than a scintilla of competent evidence supports it. *Id.* Thus, to disregard the jury's finding of zero damages, the evidence must conclusively prove that the damages were greater than zero. 2 Supp. CR 63; See *Tanner*, 289

16

S.W.3d at 830. Evidential sufficiency must be measured against the jury charge. *Regal Finance Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010); *Southwestern Bell Telephone Co. v. Garza*, 164 S.W.3d 607; 619-620 (Tex. 2004); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001), 727; *Bradford v. Vento*, 48 S.W.3d 749, 756 (Tex. 2001); *Osterberg v. Peca*, 12 S.W.3d 31, 54 (Tex. 2000). The jury was asked "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate ACT Pipe & Supply, Inc. for its damages, if any, that were proximately caused by such misapplication of trust funds?" 2 Supp. CR 63. In response, the jury found that Dudley Construction, Ltd. and Richard Mark Dudley did not proximately cause any damages to ACT from a misapplication of trust funds. 2 Supp. CR 63.

When viewed in the light most favorable to the verdict, there was more than a scintilla of evidence upon which the jury could have made that finding. The evidence shows that ACT did not suffer any damages because there was no loss of the construction funds–they were held by Dudley Construction, Ltd. because there was a dispute between the parties due to ACT's overcharges as found by the jury. 6 RR 136; 7 RR 170-180; 7 RR 245; 2 Supp. CR 52; CR 913-1002; CR 56-57; CR 913-1002. Because there is more than a scintilla of evidence to support the jury's award of zero damages, the trial court erred by disregarding the jury's verdict.

17

B.      *Assuming arguendo that the evidence did not support the jury's finding of zero damages, the trial court erred by determining the amount of damages.*

Although the jury's verdict was proper, assuming arguendo that it was not, the trial court still could not grant a JNOV and find damages were uncontroverted and conclusively proven in the amount of $14,214.20 for the Reclaimed Water Project and $110,629.70 for the Tabor Road Project. A judgment notwithstanding the verdict is only proper when a directed verdict would have been proper. Tex. R. Civ. P. 301; *Fort Bend Cty. Drainage Dist.*, 818 S.W.2d at 394. To support the trial court's JNOV, the record must conclusively establish that the jury could reach only one decision on the amount that ACT was damaged and that no reasonable factfinder would conclude from the record that ACT was damaged in any other amount. *Senegal v. Payne*, 2015 WL 4053504, *2 (Tex. App.-Beaumont 2015, no pet.). A court is not authorized to substitute its judgment and replace the jury's assessment of the amount of money necessary to reasonably compensate the plaintiff for its injuries when the amount of damages are disputed. *Senegal*, 2015 WL 4053504 *3. In such a case, a trial court may grant a new trial if a jury's damage award is "manifestly too small or too large," not a JNOV. *Id.*; Tex.R. Civ. P. 320. Although Dudley Construction, Ltd. is unable to decipher the trial court's reasoning, the trial court clearly substituted its judgment on damages for that of the jury by rendering a JNOV. See *Senegal*, 2015 WL

18

4053504 *3; See also *Garza v. Cantu,* 431 S.W.3d 96, 108 (Tex. App.–Houston 2013, pet. denied). The trial court therefore erred by disregarding the jury's verdict and determining the amount of damages itself.

**Issue Three:** **The evidence is legally and factually insufficient to support the jury's answers that ACT Pipe & Supply, Inc. perfected its bond claim as to Dudley Construction, Ltd. and Hartford Fire Insurance Company on the Reclaimed Water Project and Tabor Road Project.**

The jury's finding that ACT perfected its bond claim on the Reclaimed Water Project and Tabor Road Project (and the trial court's incorporation of that finding into its Final Judgment) is not supported by the evidence. 2 Supp. CR 56; CR 1152. To perfect any payment bond claims, ACT had to give written notice to Dudley Construction, Ltd. and Hartford Fire Insurance Company. Tex. Gov't Code 2253.041(b). The notice must contain a sworn statement of account. Tex. Gov't Code 2253.041(c). The notice must also name the party to whom the labor or material was provided or delivered. Tex. Gov't Code 2253.044. The jury's instructions set forth these requirements. 2 Supp. CR 54-55. Because ACT did not meet those requirements, ACT did not perfect its payment bond claims.

*A. ACT did not perfect payment bond claims on the Reclaimed Water Project*

None of the notices relating to the Reclaimed Water Project were sent to Dudley Construction, Ltd. 6 RR 140-141; 6 RR 144-145; P. Ex. 5-8 (12 RR 39-67). They

19

were all addressed to RM Dudley Construction, Ltd.–an entity that was not a party to this litigation, not the contractor on the Reclaimed Water Project, and not listed on the payment bond for the Reclaimed Water Project, a copy of which was possessed by ACT. 6 RR 140-141; 6 RR 144-145; P. Ex. 5-8 (12 RR 39-67); CR 913-914; P. Ex. 15 (12 RR 109); 7 RR 83-84. None of the notices sent to Hartford Fire Insurance Company relating to the Reclaimed Water Project indicated that labor or material was provided or delivered to Dudley Construction, Ltd. 6 RR 140-141; 6 RR 144-145; P. Ex. 5-8 (12 RR 39-67). All of those notices identified RM Dudley Construction, Ltd. as the entity that received labor or material from ACT. 6 RR 140-141; 6 RR 144-145; P. Ex. 5-8 (12 RR 39-67). The notices sent by ACT were therefore defective, and ACT did not perfect its payment bond claims on the Reclaimed Water Project.

B.     *ACT did not perfect payment bond claims on the Tabor Road Project*

Only one of the notices relating to the Tabor Road Project was sent to Dudley Construction, Ltd. 6 RR 140-141; 6 RR 144-145; P. Ex. 9 (12 RR 68-71). The rest were all addressed to RM Dudley Construction, Ltd.–an entity that was not a party to this litigation, not the contractor on the Tabor Road Project, and not listed on the payment bond for the Tabor Road Project, a copy of which was possessed by ACT. 6 RR 140-141; 6 RR 144-145; P. Ex. 10-14 (12 RR 72-108); P. Ex. 16 (12 RR 116); 7 RR 83-84. Only one of the notices sent to Hartford Fire Insurance Company

20

relating to the Tabor Road Project indicated that labor or material was provided or delivered to Dudley Construction, Ltd. 6 RR 140-141; 6 RR 144-145; P. Ex. 9 (12 RR 68-71). The rest all identified RM Dudley Construction, Ltd. as the entity that received labor or material from ACT. 6 RR 140-141; 6 RR 144-145; P. Ex. 10-14 (12 RR 72-108). The one notice that is addressed to Dudley Construction, Ltd. does not contain the required sworn statement of account. P. Ex. 9 (12 RR 68-71); Tex. Gov't Code 2253.041(c). The notices sent by ACT were therefore defective, and ACT did not perfect its payment bond claims on the Tabor Road Project.

C. *The evidence is legally insufficient to support the jury's finding that ACT perfected its payment bond claims.*

A no-evidence standard is used to evaluate the evidence supporting the fact-finder's determination of an issue on which the appellant did not have the burden of proof at trial. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). The Court must sustain a no-evidence complaint if the record shows (1) there is no evidence supporting the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla, and (3) the evidence establishes the opposite of the challenged element. *HMC Hotel Props, II L.P. v. Keystone-Tex Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014).

Based on the evidence and arguments set forth above, there is no evidence supporting the jury's finding that ACT perfected its payment bond claims. Any

21

evidence offered to prove that ACT perfected its payment bond claims is not more than a mere scintilla. The evidence establishes the opposite–that ACT did not perfect its payment bond claims. Therefore, the jury erred by finding that ACT perfected its payment bond claims on the Tabor Road Project and Reclaimed Water Project.

      D.     *The evidence is factually insufficient to support the jury's finding that ACT perfected its payment bond claims.*

The insufficient-evidence standard is used to evaluate the evidence supporting an issue on which the appellant did not have the burden of proof at trial. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). The Court must sustain an insufficient evidence complaint if it determines that the evidence supporting the jury's finding is so contrary to the overwhelming weight of the evidence that the finding should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Based on the evidence and arguments set forth above, there is insufficient evidence supporting the jury's finding that ACT perfected its payment bond claims. Any evidence offered to prove that ACT perfected its payment bond claims is so weak that the jury's finding must be set aside. Any evidence offered to prove that ACT perfected its payment bond claims is so contrary to the overwhelming weight of the evidence that the finding should be set aside. Therefore, the jury erred by finding that ACT perfected its payment bond claims on the Tabor Road Project and Reclaimed Water Project.

22

**Issue Four: The trial court erred to the extent that it based its award against Dudley Construction, Ltd. and Hartford Fire Insurance Company on ACT's payment bond claim.**

Assuming arguendo that ACT did perfect its payment bond claims, to the extent that the trial court found that ACT's payment bond claim created an independent entitlement for ACT to receive payment, the trial court committed error. 2 Supp. CR 57; CR 1152-1153. ACT's alleged payment bond claim did not create an independent entitlement for ACT to receive payment. *Chilton Ins. Co. v. Pate Enterprises, Inc.*, 930 S.W.2d 877, 886 (Tex. App.–San Antonio 1996, writ denied). ACT is not entitled to payment simply because it attempted to comply with the notice requirements mandated by the Texas Government Code. *Chilton Ins. Co.*, 930 S.W.2d at 886.

**Issue Five:  The trial court erred by awarding attorney fees to ACT.**

The trial court erred by awarding attorney fees to ACT. CR 1153. The pleadings and the evidence do not support an award of attorney's fees for ACT and against Dudley Construction, Ltd., Richard Mark Dudley, and Hartford Fire Insurance Company.

Texas follows the American Rule, which provides that litigants may recover attorney's fees only if specifically provided for by statute or contract. *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex.2011). Despite timely requests in accordance with the Texas Rules of Civil Procedure, the trial court did not provide findings of fact or

conclusions of law for the basis of the award of those fees. Tex. R. Civ. P. 296-297; CR 1155; CR 1173. Without waiver of Appellants' point of error of the failure of the trial court to make findings of fact and conclusions of law that is set forth below, Appellants will attempt to address each basis for which the trial court may have awarded attorney's fees that was set forth in ACT's pleadings and how each ground is insufficient to support the trial court's award of attorney's fees.

The only claims for attorney's fees contained in ACTS's pleadings were against (1) Dudley Construction, Ltd. and Hartford Fire Insurance Company pursuant to Texas Civil Practice & Remedies Code 38.001 et. seq., (2) Dudley Construction, Ltd., Hartford Fire Insurance Company, and Richard Mark Dudley pursuant to a contract between the parties, and (3) Dudley Construction, Ltd. and Hartford Fire Insurance Company pursuant to Chapter 2253 of the Texas Government Code. CR 920-921; CR 1033.

A.    *ACT cannot receive attorney's fees pursuant to §38.001.*

The first alleged basis contained in ACT's pleadings for an award of attorney's fees is pursuant to Texas Civil Practice & Remedies Code §38.001. The trial court erred to the extent it awarded attorney's fees pursuant to that statute.

24

### 1. §38.001 Claims Against Richard Mark Dudley

ACT did not plead for attorney's fees against Richard Mark Dudley under §38.001 et. seq. CR 920. ACT did not assert any claims on a sworn account against Richard Mark Dudley. CR 916-917. Questions on Richard Mark Dudley's liability on a suit on sworn account were not submitted to the jury, and there was no corresponding finding of Richard Mark Dudley's liability on a suit on sworn account. 2 Supp. CR 49-67. ACT did not assert any other claims against Richard Mark Dudley that would entitle ACT to recover attorney's fees under §38.001 of the Texas Civil Practice & Remedies Code. CR 913-1002. To the extent that the trial court awarded attorney's fees against Richard Mark Dudley pursuant to §38.001 of the Texas Civil Practice & Remedies Code, the trial court committed error.

### 2. §38.001 Claims Against Hartford Fire Insurance Company

ACT did not assert any claims on a sworn account against Hartford Fire Insurance Company. CR 916-917. Questions on Hartford Fire Insurance Company's liability on a suit on sworn account were not submitted to the jury, and there was no corresponding finding of Hartford Fire Insurance Company's liability on a suit on sworn account. 2 Supp. CR 49-67. ACT did not assert any other claims against Hartford Fire Insurance Company that would entitle ACT to recover attorney's fees under §38.001 of the Texas Civil Practice & Remedies Code. CR 913-1002. To the

25

extent that the trial court awarded attorney's fees against Hartford Fire Insurance Company pursuant to §38.001 of the Texas Civil Practice & Remedies Code, the trial court committed error.

### 3. §38.001 Claims Against ACT Dudley Construction, Ltd.

ACT requested an award of attorney's fees against Dudley Construction, Ltd. on its sworn account claim pursuant to Texas Civil Practice & Remedies Code §38.001. CR 920. Under that statute, a person may only recover reasonable attorney's fees from an **individual** or **corporation**, in addition to the amount of a valid claim and costs, if the claim is for a sworn account. Tex. Civ. Prac. & Rem. Code §38.001(7)(Emphasis added). Dudley Construction, Ltd. is a Texas limited partnership. CR 914; Tex. Business Organizations Code §5.055. Under the plain language of Section §38.001, a person may not use §38.001 to recover attorney's fees against a limited partnership. *Fleming & Associates, L.L.P. v. Barton*, 425 S.W.3d 560, 576 (Tex. App.–Houston [14th Dist.] 2014)(review denied, rehearing on petition for review denied); see *Ganz v. Lyons Partnership, L.P.*, 173 F.R.D. 173, 173 and 175-176 (N.D. Texas, Dallas Division 1997); see also *Hoffman v. L&M Arts*, 2015 WL 1000838 *7 (N.D. Texas, Dallas Division 2015).

ACT failed to prove that it was entitled to attorney's fees under §38.001 because the evidence is legally and factually insufficient to show that Dudley

Construction, Ltd. is an individual or corporation. The evidence proves conclusively, as a matter of law, that Dudley Construction, Ltd. is a limited partnership.

A no-evidence standard is used to evaluate the evidence supporting the fact-finder's determination of an issue on which the appellant did not have the burden of proof at trial. *Graham Cent. Station, Inc.*, 442 S.W.3d at 263. The Court must sustain a no-evidence complaint if the record shows (1) there is no evidence supporting the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla, and (3) the evidence establishes the opposite of the challenged element. *HMC Hotel Props, II L.P.*, 439 S.W.3d at 913.

Based on the evidence and arguments set forth above, there is no evidence that Dudley Construction, Ltd. is an individual or corporation. Any evidence offered to prove that Dudley Construction, Ltd. is an individual or corporation is not more than a mere scintilla. The evidence establishes the opposite–that Dudley Construction, Ltd. is not an individual or corporation. Therefore, the trial court erred to the extent it awarded attorney's fees against Dudley Construction, Ltd. pursuant to §38.001 *et. seq*.

The insufficient-evidence standard is used to evaluate the evidence supporting an issue on which the appellant did not have the burden of proof at trial. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). The Court must sustain an insufficient evidence complaint if it determines that the evidence supporting the finding is so

27

contrary to the overwhelming weight of the evidence that the finding should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Based on the evidence and arguments set forth above, there is insufficient evidence that Dudley Construction, Ltd. is an individual or corporation. Any evidence offered to prove that Dudley Construction, Ltd. is an individual or corporation is so weak that the trial court's award of attorney's fees must be set aside. Any evidence offered to prove that Dudley Construction, Ltd. is an individual or corporation is so contrary to the overwhelming weight of the evidence that the trial court's award of attorney's fees should be set aside. Therefore, the trial court erred to the extent it awarded attorney's fees against Dudley Construction, Ltd. pursuant to §38.001 *et. seq.*

### 4. Required demand letters not provided.

Plaintiff also failed to provide any evidence of a demand letter required under Texas Civil Practice & Remedies Code §38.002 *et. seq.* for an award of attorney's fees. To recover attorney's fees under 38.001 *et. seq.*, ACT must have presented the claim to the opposing party and been represented by an attorney. Tex. Civ. Prac. & Rem. Code 38.002; *Hermann Hosp. v. Vardemann*, 775 S.W.2d 866, 868 (Tex. App.–Houston [1ˢᵗ Dist.] 1989, no pet.).

There were no demand letters from an attorney of ACT which demanded payment pursuant to 38.001 *et. seq.* from Dudley Construction, Ltd., Hartford Fire

28

Insurance Company, or Richard Mark Dudley.  (A review of the entire reporter's record and clerk's record reveals no such evidence).

The only letters in the record demanding payment were the payment bond letters discussed in Issue Number Three of this Appellants' Brief.  P. Ex. 5-14.  As discussed in that Issue Number Three, none of the letters relating to the Reclaimed Water Project were addressed to Dudley Construction, Ltd. or an agent of Dudley Construction, Ltd.  P. Ex. 5-8 (12 RR 39-67); Tex. Civ. Prac. & Rem. Code §38.002. Only one letter relating to the Tabor Road Project was addressed to Dudley Construction, Ltd.; the rest were all addressed to an entity that is not a party to this suit.  P. Ex. 9-14 (12 RR 68-108).The letters do not state that ACT was represented by an attorney.  Tex. Civ. Prac. & Rem. Code. 38.002(1).  Therefore, those letters do not meet the basic requirements of Section 38.002 of the Texas Civil Practice & Remedies Code.

A no-evidence standard is used to evaluate the evidence supporting the fact-finder's determination of an issue on which the appellant did not have the burden of proof at trial. *Graham Cent. Station, Inc.*, 442 S.W.3d at 263.  The Court must sustain a no-evidence complaint if the record shows (1) there is no evidence supporting the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla, and (3) the evidence establishes the opposite of the challenged

element.  *HMC Hotel Props, II L.P.*, 439 S.W.3d at 913.

Based on the evidence and arguments set forth above, there is no evidence that ACT's claims were presented in accordance with Texas Civil Practice & Remedies Code §38.002.  Any evidence offered to prove that ACT's claims were presented in accordance with Texas Civil Practice & Remedies Code §38.002 is not more than a mere scintilla.  The evidence establishes the opposite–that ACT's claims were not presented in accordance with Texas Civil Practice & Remedies Code 38.002.  Therefore, the trial court erred to the extent it awarded attorney's fees against Dudley Construction, Ltd. pursuant to §38.001 *et. seq*.

The insufficient-evidence standard is used to evaluate the evidence supporting an issue on which the appellant did not have the burden of proof at trial.  *Croucher*, 660 S.W.2d at 58.  The Court must sustain an insufficient evidence complaint if it determines that the evidence supporting the finding is so contrary to the overwhelming weight of the evidence that the finding should be set aside.  *Garza v. Alviar*, 395 S.W.2d at 823.

Based on the evidence and arguments set forth above, there is insufficient evidence that ACT's claims were presented in accordance with Texas Civil Practice & Remedies Code §38.002.  Any evidence offered to prove ACT's claims were presented in accordance with Texas Civil Practice & Remedies Code §38.002 is so

weak that the trial court's award of attorney's fees must be set aside. Any evidence offered to prove that ACT's claims were presented in accordance with Texas Civil Practice & Remedies Code §38.002 is so contrary to the overwhelming weight of the evidence that the trial court's award of attorney's fees should be set aside. Therefore, the trial court erred to the extent it awarded attorney's fees against Dudley Construction, Ltd. pursuant to §38.001 *et. seq*.

### B. *No Contract Between Parties Provides for Attorney's Fees*

The second alleged basis contained in ACT's pleadings for an award of attorney's fees is pursuant to a contract between the parties. CR 921. The trial court erred to the extent it awarded attorney's fees on that basis.

ACT provided no evidence of any contract between all of these parties collectively.[2] ACT provided no evidence of any contract between ACT and Hartford Fire Insurance Company. *Id*. ACT provided no evidence of any contract between ACT and Richard Mark Dudley personally. *Id*. The only signed agreement in the record between ACT and Dudley Construction, Ltd. is the Purchase Order. *Id*.; D. Ex. 3. That Purchase Order does not provide for the payment of attorney's fees in the event of any litigation between the parties. D. Ex. 3. It is completely silent as to attorney's fees. D. Ex. 3.

---

[2] A review of the entire reporter's record and clerk's record reveals no such evidence.

31

To the extent that trial court based the award of attorney's fees under some sort of breach of contract claim, no breach of contract claim was asserted by ACT against any of the parties. CR 913-923. Questions on Appellants' liability on a breach of contract claim were not submitted to the jury, and there was no corresponding finding of any of the Appellants' liability on a breach of contract claim. 2 Supp. CR 49-66. Furthermore, any claims for recovery of attorney's fees that were pursuant to an unpled contract claim are subject to the same arguments set forth above that ACT may not recover attorney fees in this matter.

C.      *Chapter 2253 of the Texas Government Code Cannot Be Basis for Attorney's Fees.*

The third alleged basis contained in ACT's pleadings for an award of attorney's fees is pursuant to Chapter 2253.074 of the Texas Government Code. The trial court erred to the extent it awarded attorney's fees pursuant to that statute against Richard Mark Dudley and Dudley Construction, Ltd.

### 1. 2253.074 claims against Richard Mark Dudley

ACT did not plead for attorney's fees against Richard Mark Dudley pursuant to Chapter 2253.074 of the Texas Government Code. ACT did not assert any claims on a payment bond claim against Richard Mark Dudley. CR 919-920. To the extent that the trial court awarded attorney's fees against Richard Mark Dudley pursuant to Chapter 2253.074 of the Texas Government Code, the trial court committed error.

32

Chapter 2253.074 of the Texas Government Code is the statute that authorizes the trial court to award costs and reasonable attorney fees that are equitable against a surety in a suit to enforce a claim on a payment bond. Tex. Gov't Code 2253.074; *A.D. Willis Co., Inc./Metal Bldg. Components, Inc. v. Metal Bldg. Components, Inc.*, 2000 WL 1508500, *8 (Tex. App.–Austin 2000, pet. denied). Richard Mark Dudley is not a surety on the payment bonds for the Tabor Road Project and Reclaimed Water Project. P. Ex. 15; P. Ex. 16. The trial court committed error to the extent that the trial court awarded attorney's fees against Richard Mark Dudley pursuant to Chapter 2253.074 of the Texas Government Code.

### 2. 2253.074 claims against Dudley Construction, Ltd.

Chapter 2253.074 of the Texas Government Code is the statute that authorizes the trial court to award costs and reasonable attorney fees that are equitable against a surety in a suit to enforce a claim on a payment bond. Tex. Gov't Code 2253.074; *A.D. Willis Co., Inc./Metal Bldg. Components, Inc.*, 2000 WL 1508500, *8. Dudley Construction, Ltd. is not a surety on the payment bonds for the Tabor Road Project and Reclaimed Water Project. P. Ex. 15; P. Ex. 16. The trial court committed error to the extent that the trial court awarded attorney's fees against Dudley Construction, Ltd. pursuant to Chapter 2253.074 of the Texas Government Code.

*D.  ACT could not recover attorney's fees on its Trust Fund Claim*

To the extent the trial court awarded attorney's fees based upon ACT's misapplication of trust fund claim, such an award would be error.  ACT did not plead for attorney's fees pursuant to a misapplication of trust fund claim.  CR 920-921.  Furthermore, misapplication of trust fund claims do not provide for recovery of attorney's fees.  Tex. Property Code 162.001 *et. seq.*; *Larrison v. Catalina Design*, 2011 WL 582730, *5 (Tex. App.–Fort Worth 2011, no pet.).

*E.  No attorney's fees due to ACT's failure to prevail on its causes of action*

As set forth above in Appellants' previous issues on appeal, ACT cannot prevail on its claim for suit on sworn account on the Tabor Road Project, on its payment bond claims, and on its misapplication of trust funds claims.  To the extent that this Court sustains Appellants' points of error on ACT's causes of action, ACT cannot recover attorney's fees on those causes of action.  Any award of attorney's fees on those causes of action should be reversed.  See *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 143 (Tex. App.–El Paso 1997, pet. denied).

**Issue Six:  The trial court erred by awarding ACT the entire amount of attorney's fees requested by ACT because ACT did not segregate its attorney's fees.**

ACT failed to segregate attorney fees on claims for which attorney's fees are recoverable from claims for which attorney's fees are not recoverable.  The trial court

erred by not requiring ACT to segregate its fees and awarding ACT the entire amount of attorney's fees requested by ACT.  CR 1033; CR 1153.

The evidence is clear that ACT cannot recover all of its attorney fees in this case.  ACT made claims against R.M. Dudley Construction, Inc., now known as Dudley Construction Management Services, Ltd., R.M. Dudley Holdings, LLC, and R.M. Dudley Holdings 2, LLC.  CR 913-914. The trial court directed a verdict against ACT and for those defendants.  CR 1150-1154; 2 Supp. CR 7-36, 42-66.  ACT made claims under the prompt pay act, alter ego, fraud, and misrepresentation.  The trial court directed a verdict against all of those claims made by ACT.  CR 1150-1154; 2 Supp. CR 7-36, 42-66.  ACT acted as a defendant against Dudley Construction, Ltd.'s claims for breach of contract and fraud.  CR 425-426.  ACT requested fees relating to all of those causes of action and defenses.  CR 1026-1139.

ACT cannot recover attorney's fees on causes of action against defendants for which it did not prevail.  See *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).  ACT cannot recover attorney's fees for torts such as fraud and misrepresentation.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312 (Tex. 2006). ACT cannot recover attorney's fees for defending against claims for breach of contract and fraud.  *Lindley v. McKnight*, 349 S.W.3d 113, fn 26 (Tex. App-Fort Worth 2011, no pet.)

35

Fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 311. The trial court therefore erred by awarding ACT the full amount of unsegregated attorney's fees requested by ACT.

**Issue Seven:** **The evidence is legally and factually insufficient to support the amount of attorney's fees awarded because they were not reasonable or necessary.**

The trial court awarded ACT $131,823.99 in attorney's fees, an amount in excess of the damages awarded. CR 1152-1153. This amount of attorney's fees awarded was not reasonable nor was it necessary.

ACT admitted that "it is clear the jury agreed with Defendants' arguments as to which agreements applied and which credits should be given." CR 1031. The jury found that ACT breached its contract with Dudley Construction, Ltd., but that such breach was excused. 2 Supp. CR 65. The trial court also directed a verdict against ACT and for three defendants. CR 1150-1154; 2 Supp. CR 7-36, 42-66. The trial court also directed a verdict against ACT on its fraud and alter ego claims. CR 1150-1154; 2 Supp. CR 7-36, 42-66. The trial court's award of attorney's fees was unreasonable, especially in light of the directed verdicts of the trial court and the findings made by the jury.

The Texas Supreme Court in *Arthur Andersen* outlined factors for courts to

consider in determining the reasonableness and necessity of attorney's fees. *Arthur Anderson & Company v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). One of the factors outlined in *Arthur Andersen* is the amount involved and the results obtained. *Arthur Anderson & Company*, 945 S.W.2d at 818; *Young v. Qualls*, 223 S.W.3d 312, 314 (Tex. 2007). The importance of this factor was reiterated in *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009).

The amount involved and the results obtained by Plaintiff in this matter do not justify an award of $131,823.99 in attorney's fees. The damages awarded by the trial court were significantly less than the attorney fees sought by ACT. CR 1150-1154; CR 913-1002. As ACT acknowledges, "it is clear the jury agreed with Defendants' arguments as to which agreements applied and which credits should be given." CR 915; CR 1031; CR 1150-1154; CR 913-1002. The jury found that the amounts sued for by ACT were not the amounts agreed upon by the parties. 2 Supp. CR 50. The amount of attorney's fees awarded by the trial court was not reasonable, and the trial court abused its discretion by awarding that amount of attorney's fees.

The amount of attorney fees sought by ACT were also not necessary. Dudley Construction, Ltd. offered to pay the claim if an invoice in the proper amount was submitted. 7 RR 245; 6 RR 136; See also 9 RR 101 (that statement was excluded from the jury trial, but the trial court heard it). ACT refused to provide an accurate

invoice and proceeded to file the lawsuit asserting the prices rejected by the jury. 7 RR 245; CR 913-1002; 2 Supp. CR 50; 2 Supp. CR 52. The jury agreed with Dudley Construction, Ltd. that ACT claimed and sued for an excessive amount when the jury rejected the amount of ACT's claims on both projects. CR 913-1002; 2 Supp. CR 50; 2 Supp. CR 52. The trial court should not have rewarded ACT's intransigence and punish Appellants' for ACT's excessive claims by forcing them to pay ACT's unnecessary attorney's fees. The Court abused its discretion by awarding those attorney's fees.

A no-evidence standard is used to evaluate the evidence supporting the fact-finder's determination of an issue on which the appellant did not have the burden of proof at trial. *Graham Cent. Station, Inc.*, 442 S.W.3d at 263. The Court must sustain a no-evidence complaint if the record shows (1) there is no evidence supporting the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla, and (3) the evidence establishes the opposite of the challenged element. *HMC Hotel Props, II L.P.*, 439 S.W.3d at 913.

Based on the evidence and arguments set forth above, there is no evidence that the amount of the award of attorney's fees was reasonable and necessary. Any evidence offered to prove that the amount of the award of attorney's fees was reasonable and necessary is not more than a mere scintilla. The evidence establishes

the opposite–that the amount of the award of attorney's fees was not reasonable and necessary. Therefore, the trial court abused its discretion with regards to the amount of attorney's fees awarded to ACT.

The insufficient-evidence standard is used to evaluate the evidence supporting an issue on which the appellant did not have the burden of proof at trial. *Croucher*, 660 S.W.2d at 58. The Court must sustain an insufficient evidence complaint if it determines that the evidence supporting the finding is so contrary to the overwhelming weight of the evidence that the finding should be set aside. *Garza v. Alviar*, 395 S.W.2d at 823.

Based on the evidence and arguments set forth above, there is insufficient evidence that the amount of the award of attorney's fees was reasonable and necessary. Any evidence offered to prove the amount of the award of attorney's fees was reasonable and necessary is so weak that the trial court's award of attorney's fees must be set aside. Any evidence offered to prove that the amount of the award of attorney's fees was reasonable and necessary is so contrary to the overwhelming weight of the evidence that the amount of the trial court's award of attorney's fees should be set aside. Therefore, the trial court erred abused its discretion with regards to the amount of attorney's fees awarded to ACT.

**Issue Eight:** **The trial court erred by failing to file requested findings of fact and conclusions of law.**

The trial court erred by failing to file findings of fact and conclusions of law as requested by Appellants. In this case, the trial court was the factfinder with regards to attorney's fees. CR 1033. Requests for findings of fact and conclusions of law are appropriate on court-decided issues. *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997).

Appellants requested the trial court to make findings of fact and conclusions of law and notified the trial court of past due findings of fact and conclusions of law. CR 1155-1156; CR 1173-1174; Tex. R. Civ. P. 296-297. When properly requested, the trial court has a mandatory duty to file findings of fact. *Cherne Indus. v. Magallanes*, 763 S.W.2d 768, 772 (Tex 1989).

Appellants are harmed because Appellants are required to guess at the reasons for the trial court's decision. *Larry F. Smith Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611, 615 (Tex. App.–Dallas 2003, pet. denied). The advantage accruing to Appellants by requesting findings of fact and conclusions of law is the ability to limit the issues on appeal. *Id*. Absent findings, the trial court's error harmed Appellants because Appellants are forced to attack all the possible grounds supporting the judgment instead of the grounds actually found by the trial court. *Id.* at 615-616; *Liberty Mut. Fire Ins. v. Laca*, 243 S.W.3d 791, 794 (Tex. App.–El Paso 2007, no pet.).

40

The appellate court is requested to abate the appeal and remand the case to the trial court to make findings of fact and conclusions of law unless the error is not curable, in which case the appellate court should reverse and remade the case for a new trial.

**Issue Nine:  The trial court erred by directing a verdict and refusing to submit jury questions on Dudley Construction, Ltd.'s fraud claim.**

The trial court erred by not submitting Dudley Construction, Ltd.'s fraud claim to the jury.  There was sufficient evidence to support Dudley Construction, Ltd.'s fraud claim.

The elements of a cause of action for fraud are (1) the party makes a material misrepresentation, (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, (3) the misrepresentation is made with the intention that it should be acted on by the other party, and (4) the other party relies on the misrepresentation and thereby suffers injury. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011); *Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). "Misrepresentation" means (1) a false statement of fact, (2) a promise of future performance made with an intent, at the time the promise was made, not to perform as promised, (3) a statement of opinion based on a false statement of fact, (4) a

41

statement of opinion that the maker knows to be false, (5) or an expression of opinion that is false, made by one who has, or purports to have, special knowledge of the subject matter of the opinion. *Italian Cowboy Partners*, 341 S.W.3d at 338; *Formosa Plastics Corp. USA v. Presidio Engineers & Constractors, Inc.*, 960 S.W.2d 41, 46-48 (Tex. 1998); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).

The jury questions requested by Dudley Construction, Ltd. on its fraud claim follow the Texas Pattern Jury Charges for fraud. 2 Supp. 38-39; Texas Pattern Jury Charges–Business, Consumer, Insurance, & Employment (2014) PJC 100.12; 105.1-105.3E; 115.20. Those jury questions properly set forth the elements of fraud to be found by the jury.

ACT made the material misrepresentation to Dudley Construction, Ltd. that it would provide restrained joint pipe. ACT provided a submittal for restrained joint pipe. 6 RR 65; 6 RR 86. ACT provided lead times of when the restrained joint pipe would be delivered. 6 RR 112; 7 RR 134-135; D. Ex. 15 ACT made statements that restrained joint pipe was ready to be delivered. 7 RR 138; D. Ex. 18.

These statements were false because ACT did not order restrained joint pipe. 6 RR 66-67. ACT did not order the restrained joint pipe after the delivery of the rejected pipe was brought to ACT's attention. 6 RR 67; 6 RR 70; 6 RR 73; 6 RR 112; 7 RR 74. ACT therefore made false statements to Dudley Construction, Ltd. by

42

stating that the restrained joint pipe was ready to be delivered and by providing false lead times. 6 RR 112; 7 RR 134-135; D. Ex. 15; 7 RR 138; D. Ex. 18; 7 RR 234-235.

This representation was important to Dudley Construction, Ltd. because the slip joint pipe submittal was rejected by the City of Bryan, and ACT promised delivery of the pipe that would satisfy the City of Bryan. 6 RR 64-65. Dudley Construction, Ltd. conveyed to the City of Bryan that restrained joint pipe would be delivered based on ACT's misrepresentations. 7 RR 233-234. Until July 6, 2011, Dudley Construction, Ltd. did not know that restrained joint pipe would not be delivered. 7 RR 223; P. Ex. 23. Dudley Construction, Ltd. then had discussions from July 6, 2011 to September 21, 2011 with the City of Bryan to use the delivered slip joint pipe 7 RR 223.

ACT made the misrepresentation that the restrained joint pipe would be delivered with knowledge of its falsity or made it recklessly without any knowledge of the truth and as a positive assertion. Direct or circumstantial evidence may be used to prove that ACT made the statement with or without knowledge of its truth. *Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 526 (Tex. 1998). ACT provided a submittal for the pipe but did not order it from the manufacturer. 6 RR 65-67; 6 RR 86. The evidence showed that ACT made the representations regarding delivery of the restrained joint pipe when it knew that it had not ordered the restrained joint pipe. 6 RR 66-73, 112; 7 RR 74. ACT therefore made false statements to

Dudley Construction, Ltd. by stating that the restrained joint pipe was ready to be delivered and by providing false lead times. 6 RR 112; 7 RR 134-135; D. Ex. 15; 7 RR 138; D. Ex. 18; 7 RR 234-235.

ACT made with the misrepresentation with the intent that it should be acted on by Dudley Construction, Ltd. 6 RR 112; 7 RR 134-135; D. Ex. 15; 7 RR 138; D. Ex. 18; 7 RR 234-235. Dudley Construction, Ltd. conveyed to the City of Bryan that restrained joint pipe would be delivered based on ACT's misrepresentations. 7 RR 233-234. From March 31, 2011 to July 6, 2011, ACT caused delays on the project by its deception, and Dudley Construction, Ltd. suffered injury as a result. P. Ex. 23; D. Ex. 14, 15-23, 26; 6 RR 65; 7 RR 134-139, 160, 168-170, 183-196, 233-234, 250-252; 8 RR 15-21. Dudley Construction, Ltd. relied on the misrepresentation and thereby suffered injury.

A directed verdict is reviewed under a no-evidence standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). If there is evidence to support the submission of the jury questions, the trial court's refusal to submit such questions is reversible error. *Neuro-Developmental Associates of Houston v. Corporate Pines Realty Corp.*, 908 S.W.2d 26, 28 (Tex. App.–Houston [1st Dist.] 1995, pet. denied). The evidence set forth above shows that there was evidence to submit the questions of fraud to the jury, and the trial court erred by refusing to do so and granting a

directed verdict against Dudley Construction, Ltd.'s fraud claim.

## PRAYER

For the above reasons, it is requested that this Court:

1.      Reverse and render that ACT be awarded $14,214.20 in actual damages, courts costs, and post-judgment interest, and no attorney's fees against Dudley Construction, Ltd.;

2.      Alternatively, reverse and render that ACT not recover any attorney's fees;

3.      Alternatively, abate the appeal and remand the case to the trial court to make findings of fact and conclusions of law;

4.      Alternatively, reverse and remand this case for a new trial on all issues of liability and damages;

5.      Alternatively, reverse and remand this case for a new determination of attorney's fees;

6.      Alternatively, reverse and remand this case for a new trial on Dudley Construction, Ltd.'s fraud claim against ACT.

45

Respectfully submitted,

THE SWEARINGEN LAW FIRM
ROBERT A. SWEARINGEN, P.C.


By:           /s/Robert A. Swearingen
          Robert A. Swearingen
          State Bar Number 19563050
          3002 Texas Avenue South
          College Station, Texas 77845-5048
          (979) 680-9993 ~ Telephone
          (979) 680-9991 ~ Facsimile

          ATTORNEY FOR APPELLANTS
          DUDLEY CONSTRUCTION, LTD.,
          RICHARD MARK DUDLEY, AND
          HARTFORD FIRE INSURANCE
          COMPANY

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using WordPerfect X3 and contains 12,409 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).


          /s/ Robert A. Swearingen
          ROBERT A. SWEARINGEN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent by certified mail, return receipt requested, hand delivery, and/or facsimile to counsel listed below on this the 23rd day of December, 2015.


W. Jason Walker
Lisa M. Norman
ANDREWS MYERS, P.C.
3900 Essex Lane, Suite 800
Houston, Texas 77027
*via e-mail*


/s/ Robert A. Swearingen
ROBERT A. SWEARINGEN

# APPENDIX

Tab 1          Final Judgment

Tab 2          Court Instructions to the Jury with answers

Tab 3          Texas Business Organizations Code §5.055

Tab 4          Texas Civil Practice & Remedies Code §38.001

Tab 5          Texas Civil Practice & Remedies Code §38.002

Tab 6          Texas Government Code §2253.041

Tab 7          Texas Government Code §2253.044

Tab 8          Texas Government Code §2253.074

Tab 9          Texas Property Code §162.001

Tab 10         Texas Rule of Civil Procedure §296

Tab 11         Texas Rule of Civil Procedure §297

Tab 12         Texas Rule of Civil Procedure §301

Tab 13         Purchase Order

Recieved 3/26/2015 8:51:06 P
Marc Hamlin, District Clerk
Brazos County, Texas
Kayla Johnson
Filed 4/2/2015 11:14:39 AM
Marc Hamlin, District Clerk
Brazos County, Texas
Michael Wersig

CAUSE NO. 12-000281-CV-361

| | | |
|---|---|---|
| ACT PIPE & SUPPLY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| vs. | § | OF BRAZOS COUNTY |
| | § | |
| DUDLEY CONSTRUCTION, LTD., | § | |
| RICHARD MARK DUDLEY, and | § | |
| HARTFORD FIRE INSURANCE COMPANY | § | 361st JUDICIAL DISTRICT |

## FINAL JUDGMENT

Plaintiff, ACT PIPE & SUPPLY, INC. ("Plaintiff"), filed suit against Defendants, DUDLEY CONSTRUCTION, LTD., RICHARD MARK DUDLEY and HARTFORD FIRE INSURANCE COMPANY ("Defendants") alleging suit on a sworn account, a bond claim and violation of the construction trust fund statute. Defendants appeared and answered in this case.

On November 17, 2014, the Court called this case to trial. Plaintiff and Defendants appeared in person and through their attorneys and announced ready for trial. The Court determined that it had jurisdiction over the subject matter and over all parties to this proceeding. The jury was impaneled and the parties submitted all factual and legal matters in controversy between the parties to this Court beginning on November 17, 2014.

After the close of all the evidence, the jury delivered its verdict on November 20, 2014, which is incorporated herein by reference. The jury found that with regard to Plaintiff's sworn account claim against Dudley Construction, Ltd. for the Reclaimed Water Project for the City of College Station, Plaintiff supplied labor, materials or equipment to Dudley Construction (Question No. 1), that Plaintiff's prices were charged in accordance with the parties' agreement (Question No. 2), that Plaintiff remain unpaid by Dudley Construction, Ltd. (Question No. 3), and the amount that would fairly and reasonably compensate Plaintiff is $14,214.20 (Question

1598.161

No. 4). The jury found that with regard to Plaintiff's sworn account claim against Dudley Construction, Ltd. for the Tabor Road Project for the City of Bryan, Plaintiff supplied labor, materials or equipment to Dudley Construction (Question No. 1), that Plaintiff remain unpaid by Dudley Construction, Ltd. (Question No. 3), and the amount that would fairly and reasonably compensate Plaintiff is $110,269.70 (Question No. 4). The jury found that Plaintiff perfected its bond claim as to Dudley Construction, Ltd. and Hartford Fire Insurance Company for both projects (Question No. 6), and found that the amount of the bond claim perfected by Plaintiff for the Reclaimed Water Project is $14,214.20 and for the Tabor Road Project is $110,269.70 (Question No. 7). With regard to the construction trust fund claim, the jury found that Dudley Construction, Ltd. and Richard Mark Dudley were trustees of trust funds received from the City of College Station for the Reclaimed Water Project (Question No. 8) and for the City of Bryan for the Tabor Road Project (Question No. 9), that Plaintiff was a trustee of those trust funds (Question No. 10), and that Dudley Construction, Ltd. and Richard Mark Dudley misapplied the trust funds for the Reclaimed Water Project (Question No. 11) and for the City of Bryan for the Tabor Road Project (Question No. 12).

The jury answered "no" as to whether the prices charged by Plaintiff for on its sworn account on the Tabor Road Project were in accordance with the parties' agreements (Question No. 13). The jury did not answer the question concerning damages for the trust fund claim (Question No. 13). Plaintiff filed a Motion to Disregard Certain Jury Findings, Motion for Judgment Notwithstanding the Verdict, and Motion for Entry of Judgment. The Court is of the opinion the Motion is well-taken and should be GRANTED.

It is ORDERED that Plaintiff's Motion is GRANTED; the Court accepts the jury's finding that Plaintiff supplied labor, materials or equipment to Dudley Construction in response

2

1598.161

to Question No. 1; the jury's answer to Question No. 2 as to whether the prices charged by Plaintiff were in accordance with the parties' agreement is accepted as to the Reclaimed Water Project and disregarded as conclusively proven "yes" as to the Tabor Road Project; the Court accepts the jury's finding in response to Question No. 3 that Plaintiff remains unpaid by Dudley Construction; the Court accepts the jury's damages award in response to Question No. 4 in the amount of $14,214.20 for the Reclaimed Water Project and $110,629.70 for the Tabor Road Project; the Court accepts the jury's finding in response to Question No. 6 that Plaintiff perfected its bond claim as to Dudley Construction, Ltd. and Hartford Fire Insurance Company for both projects; the Court accepts the jury's finding in response to Question No. 7 that the amount of the bond claim perfected by Plaintiff for the Reclaimed Water Project is $14,214.20 and for the Tabor Road Project is $110,269.70; the Court accepts the jury's finding in response to Questions No. 8 and No. 9 that Dudley Construction, Ltd. and Richard Mark Dudley were trustees of trust funds received from the City of College Station and the City of Bryan; the Court accepts the jury's finding in response to Question No. 10 that Plaintiff was a trustee of those trust funds; the Court accepts the jury's finding in response to Questions No. 11 and No. 12 that Dudley Construction, Ltd. and Richard Mark Dudley misapplied the trust funds for both projects; the Court finds damages were uncontroverted and conclusively proven in the amount of $14,214.20 for the Reclaimed Water Project and $110,629.70 for the Tabor Road Project, and the Court substitutes those amounts for the jury's non-answer to Question No. 13; the Court finds attorney's fees were uncontroverted and conclusively proven; and, the Court renders judgment for Plaintiff against Defendants as follows:

It is ORDERED, ADJUDGED and DECREED that Plaintiff, ACT PIPE & SUPPLY, INC., have and recover actual damages in the sum of $124,483.90 from and against Defendants,

1598.161

DUDLEY CONSTRUCTION, LTD., RICHARD MARK DUDLEY and HARTFORD FIRE INSURANCE COMPANY, jointly and severally. It is further,

ORDERED, ADJUDGED and DECREED that Plaintiff, ACT PIPE & SUPPLY, INC., have and recover prejudgment interest on the sum awarded at the rate of five percent (5%) per annum from and after February 1, 2012, up to the date this judgment is signed. It is further,

ORDERED, ADJUDGED and DECREED that Plaintiff, ACT PIPE & SUPPLY, INC., have and recover its reasonable and necessary attorneys' fees from and against Defendants, DUDLEY CONSTRUCTION, LTD., RICHARD MARK DUDLEY and HARTFORD FIRE INSURANCE COMPANY, jointly and severally, in the amount of $131,823.99 through the trial court level, ~~together with its reasonable and necessary attorneys' fees in the sum of $30,000.00~~ as its reasonable and necessary attorneys' fees for any appeal to the Court of Appeals (provided Plaintiff prevails in said Court), the sum of $15,000.00 as its reasonable and necessary attorneys' fees for any appeal to the Supreme Court of Texas (provided Plaintiff prevails in said Court), and the sum of $10,000.00 as its reasonable and necessary attorneys' fees if the Texas Supreme ~~Court decides to hear the appeal (provided Plaintiff prevails in said Court).~~ It is further,

ORDERED, ADJUDGED and DECREED that Plaintiff, ACT PIPE & SUPPLY, INC., have and recover against Defendants, DUDLEY CONSTRUCTION, LTD., RICHARD MARK DUDLEY and HARTFORD FIRE INSURANCE COMPANY, jointly and severally, post-judgment interest on the sums awarded herein at the rate of five percent (5%) compounded annually from the date this Judgment is signed until this Judgment is paid. It is further,

ORDERED, ADJUDGED and DECREED that Plaintiff, ACT PIPE & SUPPLY, INC., recover all costs of court from Defendants, DUDLEY CONSTRUCTION, LTD., RICHARD MARK DUDLEY and HARTFORD FIRE INSURANCE COMPANY, jointly and severally.

1598.161

All writs and processes necessary for the enforcement of this Judgment shall issue. All relief not expressly granted herein is denied. This is a final and appealable Judgment disposing of all parties, claims and causes of action.

SIGNED on this _2nd_ day of _April_ 2015.

_____
PRESIDING JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

ANDREWS MYERS, P.C.


By:     /s/ Lisa M. Norman
        W. JASON WALKER
        Texas Bar No. 00798568
        Jwalker@andrewsmyers.com
        LISA M. NORMAN
        Texas Bar No. 24037190
        Lnorman@andrewsmyers.com
        3900 Essex Lane, Suite 800
        Houston, Texas 77027
        713-850-4200 – Telephone
        713-850-4211 – Facsimile

ATTORNEYS FOR PLAINTIFF,
ACT PIPE & SUPPLY, INC.


4810-4077-5458, v. 1

5

1598.161

CAUSE NO. 12-000281-CV-361

| ACT PIPE & SUPPLY, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | BRAZOS COUNTY, TEXAS |
| | § | |
| DUDLEY CONSTRUCTION. LTD, | § | |
| RICHARD MARK DUDLEY, and | § | |
| HARTFORD FIRE INS. CO. | § | 361st DISTRICT COURT |

FILED ___ o'clock ___ M

DEC 1 0 2015

MARC HAMLIN, DIST CLERK
BRAZOS COUNTY, TEXAS
BY ___ Deputy

## COURT'S INSTRUCTIONS TO THE JURY

MEMBERS OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions that have previously been given you. I shall now give you additional instructions that you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice, or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, the evidence seen and heard in this courtroom, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not presented by the evidence in this case.

3. Since every answer that is required by these instructions is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers. That is a matter for the court exclusively.

5. You will not decide a question by lot or drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6. You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the Judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other juror who observes a violation of the Court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based upon a preponderance of the evidence unless otherwise instructed. If you do not find that a

43

preponderance of the evidence supports a "Yes" answer, then answer "No." If the question directs you to give an answer other than "Yes" or "No", you must still base your answer on a preponderance of the evidence, unless otherwise instructed.

When the words are used in this charge in a sense that varies from the commonly understood meaning, you are given a proper legal definition, which you are bound to accept in place of any other meaning. The court now gives you certain definitions of terms used in this charge, by which you will be governed in arriving at your answer to the questions submitted to you. Additional definitions and instructions may appear with specific questions, and should be read before answering the questions.

## DEFINITIONS

**Preponderance of the evidence**. The term *preponderance of the evidence* means the greater weight and degree of credible evidence, including testimony, introduced before you and admitted in this case.

You are instructed that a fact may be established by direct evidence or by circumstantial evidence, or by both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

Now, bearing in mind the foregoing instructions and definitions, you will answer the questions set forth herein.

### Presiding Juror

When you go into the jury room to answer the questions, you will select your own presiding juror and then you will deliberate upon your answers to the questions asked.

The presiding juror has these duties:

(a) preside over your deliberations, meaning manage the discussions, and see that you follow

these instructions;

(b) give written questions or comments to the bailiff which you desire to have delivered to the judge;

(d) vote on the questions;

(e) write down the answers you agree on;

(f) get the signatures for the verdict certificate;

(g) notify the bailiff that you have reached a verdict.

## Instructions for Signing the Verdict Certificate

1. You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the instructions. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer;

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

If 11 jurors agree on every answer, those 11 jurors sign the verdict.

If all 12 of you agree on every answer, you are unanimous and only the Presiding Juror will sign the verdict.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of this court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

You have been permitted to take notes during the testimony in this case. In the event any of you took notes, you may rely on your notes during your deliberations. However, you may not share your notes with the other jurors and you should not permit the other jurors to share their notes with

you. You may, however, discuss the contents of your notes with the other jurors. You shall not use your notes as authority to persuade your fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. Your notes are not official transcripts. They are personal memory aides, just like the notes of the judge and the notes of the lawyers. Notes are valuable as a stimulant to your memory. On the other hand, you might make an error in observing or you might make a mistake in recording what you have seen or heard. Therefore, you are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided, and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

SIGNED on November 20, 2014.

_____
STEVE SMITH
Presiding Judge

46

CAUSE NO. 12-000281-CV-361

| | | |
|---|---|---|
| ACT PIPE & SUPPLY, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | BRAZOS COUNTY, TEXAS |
| | § | |
| DUDLEY CONSTRUCTION, LTD., | § | |
| RICHARD MARK DUDLEY and | § | |
| HARTFORD FIRE INS. CO. | § | 361st DISTRICT COURT |

---

## CERTIFICATE

---

WE, THE JURY, have answered the above and foregoing questions as herein indicated, and herewith return same into Court as our verdict.

(To be signed by the Presiding Juror if unanimous)

_____
PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous)

_George R Welch_ 　　　　　_Marium Sena Clark_

_John Brown_ 　　　　　_Kruy Ehry_

_Harry Anderson_ 　　　　　_Jan Joshi_

_Todd Brown_ 　　　　　_Cathleen Auld_

_Gayle Bit Clay_

_James R Stat_

48

## QUESTION NO. 1

Did ACT Pipe & Supply, Inc. sell and deliver labor, materials or equipment to Dudley Construction, Ltd. for any of the following:

**Answer**

Answer "Yes" or "No" as to each.

Reclaimed Water Project      Yes

Tabor Road Project      Yes

49

If you answered "Yes" as to either project in Question No. 1, then answer Question No. 2. Otherwise, do not answer Question No. 2.

## QUESTION NO. 2

Were the prices ACT Pipe & Supply, Inc. charged in accordance with the agreement between ACT Pipe & Supply, Inc. and Dudley Construction, Ltd. for either of the following projects:

**Answer**

Answer "Yes" or "No" as to each.

Reclaimed Water Project     Yes

Tabor Road Project     No

If you answered "Yes" to either project in Question No. 2, then answer Question No. 3. Otherwise, do not answer Question No. 3.

## QUESTION NO. 3

Does the amount, if any, owed to ACT Pipe & Supply, Inc. remain unpaid by Dudley Construction, Ltd. on either of the following:

## Answer

Answer "Yes" or "No."

Reclaimed Water Project       Yes

Tabor Road Project       Yes

51

If you answered "Yes" to Question No. 3, then answer Question No. 4. Otherwise, do not answer Question No. 4.

## QUESTION NO. 4

What sum of money, if paid in cash now, would fairly and reasonably compensate ACT Pipe & Supply, Inc. for the amount owed on the account for either of the following projects?

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

**ANSWER:**

Reclaimed Water Project     $14,214.20

Tabor Road Project     $110,629.70

## QUESTION NO. 5

Did Dudley Construction, Ltd. fail to comply with its obligations to ACT Pipe & Supply, Inc. under the Prompt Payment Act for any of the projects?

You are instructed that under the Prompt Payment Act, a contractor who receives payment from an owner or a person authorized to act on behalf of any owner, must pay each of its suppliers the portion of the payment that is attributable to materials provided under the relevant contract, to the extent of that supplier's interest in the payment. The payment must be made not later than the seventh day after the date the contractor receives payment from the owner.

You are instructed that if a good faith dispute exists concerning the amount owed, the contractor may withhold from the supplier up to 100% of the disputed amount for the construction project.

### Answer

Answer "Yes" or "No" as to each.

Reclaimed Water Project      No

Tabor Road Project      No

# JURY INSTRUCTION

You are instructed that the "Prime Contractor" means a person, firm or corporation that makes a public work contract with a governmental entity.

You are instructed that "Public Work Contract" means a contract for constructing, altering or repairing a public building or carrying out or completing any public work.

You are instructed that "Public Work Material" means material used or ordered and delivered for use directly to carry out a public work.

You are instructed that "Payment Bond" means the payment bond provided by Hartford for the protection of all claimants supplying labor and material to the Project. The Payment Bond is not insurance.

You are instructed that a "Claimant" for purposes of the Payment Bond is defined as anyone having a direct contractual relationship with a Prime Contractor, to perform the work or a part of the work, or to furnish labor or materials or both as a part of the work as follows:

(a) Labor is to be construed to mean labor used in the direct prosecution of the work.

(b) Material is to be construed to mean material incorporated in the work, or consumed in the direct prosecution of the work, or ordered and delivered for such incorporation or such consumption.

You are instructed that ACT Pipe & Supply, Inc. "perfected a claim" on the Bond if it performed all of the following or all of the following have occurred.

(1) ACT Pipe & Supply, Inc. furnished the labor and/or materials for which payment is claimed;

(2) ACT Pipe & Supply, Inc. mailed to Hartford, and to Dudley Construction, Ltd., as the Prime Contractor, written notice of the claim on or before the 15th day of the third month after each month in which the labor was performed or the material was delivered;

(3) The notice provided by ACT Pipe & Supply, Inc. must contain:

(a) the name of the party for whom the public work labor was performed or to whom the public work materials was delivered;

(b) the approximate date of performance or delivery;

(c) a description of the public work labor or material for reasonable identification;

54

(d)     the amount due;

(e)     a general itemization of the claim, including copies of documents, invoices or orders that reasonably identify the labor performed or material delivered for which the claim is made, the job and the destination of delivery.

(4)     ACT Pipe & Supply, Inc. mailed to Hartford, and to Dudley Construction, Ltd., as the Prime Contractor, a sworn statement of account stating in substance that the amount claimed is just and correct and all that all just and lawful offsets, payments, and credits known to ACT Pipe & Supply, Inc. have been allowed. The sworn statement of account must have been mailed on or before the 15th day of the 3rd month after each month in which the material was delivered.

## QUESTION NO. 6

Did ACT Pipe & Supply, Inc. perfect its bond claim as to Dudley Construction, Ltd. and Hartford for either of the following projects?

### Answer

Answer "Yes" or "No" as to each:

As to Dudley Construction, Ltd.:

Reclaimed Water Project     _Yes_

Tabor Road Project     _Yes_

As to Hartford:

Reclaimed Water Project     _Yes_

Tabor Road Project     _Yes_

If you answered "Yes" to both Dudley Construction, Ltd. and Hartford in Question No. 6, then answer Question No. 7. Otherwise, do not answer Question No. 7.

## QUESTION NO. 7

What is the amount of the bond claim that ACT Pipe & Supply, Inc. perfected for the following projects:

(a) Reclaimed Water Project

(b) Tabor Road Project

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents on damages, if any.

**ANSWER:**

Reclaimed Water Project    $14,214.20

Tabor Road Project    $110,629.70

## QUESTION NO. 8

Were either Dudley Construction, Ltd. or Mark Dudley, a trustee of trust funds received from the City of College Station for the Reclaimed Water Project?

Construction payments are "trust funds" if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a "trustee" of the trust funds.

### Answer

Answer "Yes" or "No" as to each:

Dudley Construction, Ltd. _____Yes_____

Richard Mark Dudley aka Mark Dudley _____Yes_____

58

## QUESTION NO. 9

Were either Dudley Construction, Ltd. or Mark Dudley a trustee of trust funds received from the City of Bryan for the Tabor Road Project?

Construction payments are "trust funds" if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a "trustee" of the trust funds.

## Answer

Answer "Yes" or "No" as to each:

Dudley Construction, Ltd.     _Yes_

Richard Mark Dudley aka Mark Dudley     _Yes_

59

If you answered "Yes" to any part of Questions No. 8 or No. 9, then answer Question No. 10. Otherwise, do not answer Question No. 10.

## QUESTION NO. 10

Was ACT Pipe & Supply, Inc. a beneficiary of trust funds for either of the following projects:

(a)    Reclaimed Water Project

(b)    Tabor Road Project

You are instructed that a supplier who furnishes material for the construction or repair of an improvement on specific real property in this state is a "beneficiary" of any trust funds paid or received in connection with the improvement.

## Answer

Answer "Yes" or "No" as to each:

Reclaimed Water Project          _____Yes_____

Tabor Road Project               _____Yes_____

60

If you answered "Yes" to any part of Question No. 8, and "Yes" to any part of Question No. 10, then answer Question No. 11. Otherwise, do not answer Question 11.

## QUESTION NO. 11

Did either Dudley Construction, Ltd. or Mark Dudley misapply trust funds for the Reclaimed Water Project?

Construction payments are "trust funds" if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

A trustee acts with "intent to defraud" when the trustee retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds.

### Answer

Answer "Yes" or "No" as to each:

Dudley Construction, Ltd.          Yes

Richard Mark Dudley aka Mark Dudley          Yes

If you answered "Yes" to Question No. 9, and "Yes" to any part of Question No. 10, then answer Question No. 12. Otherwise, do not answer Question 12.

## QUESTION NO. 12

Did either Dudley Construction, Ltd. or Mark Dudley misapply trust funds for the Tabor Road Project?

Construction payments are "trust funds" if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

A trustee acts with "intent to defraud" when the trustee retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds.

## Answer

Answer "Yes" or "No" as to each:

Dudley Construction, Ltd.      _Yes_

Richard Mark Dudley aka Mark Dudley      _Yes_

If you answered "Yes" to Question No. 11 or Question No. 12, then answer Question No. 13. Otherwise, do not answer Question 13.

## QUESTION 13

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate ACT Pipe & Supply, Inc. for its damages, if any, that were proximately caused by such misapplication of trust funds?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages, if any, and none other.

1.      Amounts owed on the Reclaimed Water Project.

2.      Amounts owed on the Tabor Road Project.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

**Answer**

Reclaimed Water Project      $0.00

Tabor Road Project      $0.00

63

## QUESTION NO. 14

Did ACT Pipe & Supply, Inc. fail to comply with an agreement with Dudley Construction, Ltd.?

Compliance with an agreement must occur within a reasonable time under the circumstances unless the parties agreed that compliance must occur within a specified time and the parties intended compliance with such time to be an essential part of the agreement.

In determining whether the parties intended time of compliance to be an essential part of the agreement, you may consider the nature and purpose of the agreement and the facts and circumstances surrounding its making.

Answer "Yes" or "No".

**ANSWER:** _Yes_

If you answered "Yes" to Question 14, then answer Question No. 15. Otherwise, do not answer Question No. 15.

## QUESTION NO. 15

Was ACT Pipe & Supply Inc.'s failure to comply with the agreement excused?

You are instructed that failure to comply with the agreement by ACT Pipe & Supply, Inc. is excused under any of the following circumstances:

(a)     Dudley Construction, Ltd.'s previous failure to comply with a material obligation of the same agreement.

(b)     The agreement is waived by Dudley Construction, Ltd. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

(c)     A different performance was accepted as full satisfaction of performance of the original obligations of the agreement.

(d)     Failure to comply with one agreement is excused if the parties agreed that a new agreement would take its place.

Answer "Yes" or "No".

**ANSWER:**     Yes

If you answered "No" to Question 15, then answer Question No. 16. Otherwise, do not answer Question No. 16.

## QUESTION NO. 16

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dudley Construction, Ltd. for its damages, if any, that were natural, probable and foreseeable consequences that resulted from ACT Pipe & Supply, Inc.'s failure to comply with the agreement?

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

**ANSWER:**

Home Office overhead                    _____

Additional dewatering overhead          _____

Extended Offsite overhead               _____

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 1. General Provisions (Refs & Annos)
      Chapter 5. Names of Entities; Registered Agents and Registered Offices
        Subchapter B. General Provisions Relating to Names of Entities

V.T.C.A., Business Organizations Code § 5.055

§ 5.055. Name of Limited Partnership or Foreign Limited Partnership

Effective: September 1, 2007
Currentness

(a) The name of a limited partnership or foreign limited partnership must contain:

(1) the word "limited";

(2) the phrase "limited partnership"; or

(3) an abbreviation of that word or phrase.

(b) The name of a domestic or foreign limited partnership that is a limited liability limited partnership must also contain the phrase "limited liability partnership" or an abbreviation of that phrase.

(c) The name of a domestic or foreign limited partnership that is a limited liability limited partnership complies with the requirements of Subsections (a) and (b) if the name of the limited partnership contains the phrase "limited liability limited partnership" or an abbreviation of that phrase.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2007, 80th Leg., ch. 688, § 22, eff. Sept. 1, 2007.

V. T. C. A., Business Organizations Code § 5.055, TX BUS ORG § 5.055
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
    Civil Practice and Remedies Code (Refs & Annos)
        Title 2. Trial, Judgment, and Appeal
            Subtitle C. Judgments
                Chapter 38. Attorney's Fees (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 38.001

§ 38.001. Recovery of Attorney's Fees

Currentness

A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

(1) rendered services;

(2) performed labor;

(3) furnished material;

(4) freight or express overcharges;

(5) lost or damaged freight or express;

(6) killed or injured stock;

(7) a sworn account; or

(8) an oral or written contract.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (1441)

V. T. C. A., Civil Practice & Remedies Code § 38.001, TX CIV PRAC & REM § 38.001

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

| Vernon's Texas Statutes and Codes Annotated |
| --- |
|    Civil Practice and Remedies Code (Refs & Annos) |
|      Title 2. Trial, Judgment, and Appeal |
|        Subtitle C. Judgments |
|          Chapter 38. Attorney's Fees (Refs & Annos) |

V.T.C.A., Civil Practice & Remedies Code § 38.002

§ 38.002. Procedure for Recovery of Attorney's Fees

Currentness

To recover attorney's fees under this chapter:

(1) the claimant must be represented by an attorney;

(2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

(3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (393)

V. T. C. A., Civil Practice & Remedies Code § 38.002, TX CIV PRAC & REM § 38.002
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

> Vernon's Texas Statutes and Codes Annotated
>   Government Code (Refs & Annos)
>     Title 10. General Government (Refs & Annos)
>       Subtitle F. State and Local Contracts and Fund Management
>         Chapter 2253. Public Work Performance and Payment Bonds (Refs & Annos)
>           Subchapter C. Notice Requirements

V.T.C.A., Government Code § 2253.041

§ 2253.041. Notice Required for Claim for Payment for Labor or Material

Currentness

(a) To recover in a suit under Section 2253.073 on a payment bond for a claim for payment for public work labor performed or public work material delivered, a payment bond beneficiary must mail to the prime contractor and the surety written notice of the claim.

(b) The notice must be mailed on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered.

(c) The notice must be accompanied by a sworn statement of account that states in substance:

(1) the amount claimed is just and correct; and

(2) all just and lawful offsets, payments, and credits known to the affiant have been allowed.

(d) The statement of account shall include the amount of any retainage applicable to the account that has not become due under the terms of the public work contract between the payment bond beneficiary and the prime contractor or between the payment bond beneficiary and a subcontractor.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

**Editors' Notes**

**REVISOR'S NOTE**

**2008 Main Volume**

(1) The revised law substitutes the term "payment bond beneficiary" for the source law term "claimant" for the reason stated in Revisor's Note (3) under Section 2253.021 of this chapter.

(2) The revised law substitutes the terms "public work labor" and "public work material" for the source law terms "labor" and "material" for the reason stated in Revisor's Note (4) under Section 2253.021 of this chapter.

Notes of Decisions (80)

V. T. C. A., Government Code § 2253.041, TX GOVT § 2253.041
Current through the end of the 2015 Regular Session of the 84th Legislature

---

**End of Document**                                         © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle F. State and Local Contracts and Fund Management
        Chapter 2253. Public Work Performance and Payment Bonds (Refs & Annos)
          Subchapter C. Notice Requirements

V.T.C.A., Government Code § 2253.044

§ 2253.044. Notice of Claim for Multiple Items of Labor or Material

Currentness

The notice for a claim for lump-sum payment for multiple items of public work labor or material must:

(1) describe the labor or material in a manner that reasonably identifies the labor or material;

(2) state the name of the party for whom the labor was performed or to whom the material was delivered;

(3) state the approximate date of performance or delivery;

(4) state whether the contract is written or oral;

(5) state the amount of the contract; and

(6) state the amount claimed.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

**Editors' Notes**

**REVISOR'S NOTE**

**2008 Main Volume**

The revised law substitutes the term "public work labor or material" for the source law terms "labor" and "material" for the reason stated in Revisor's Note (4) under Section 2253.021 of this chapter.

V. T. C. A., Government Code § 2253.044, TX GOVT § 2253.044
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle F. State and Local Contracts and Fund Management
        Chapter 2253. Public Work Performance and Payment Bonds (Refs & Annos)
          Subchapter D. Claims on Bonds; Enforcement

V.T.C.A., Government Code § 2253.074

§ 2253.074. Costs and Attorney Fees

Currentness

A court may award costs and reasonable attorney fees that are equitable in a proceeding to enforce a claim on a payment bond or to declare that any part of a claim is invalid.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

**Editors' Notes**

**REVISOR'S NOTE**

**2008 Main Volume**

The source law refers to "equitable and just" costs and reasonable attorney's fees. The revised law omits the source law term "just" because "just" is included within the meaning of "equitable."

Notes of Decisions (24)

V. T. C. A., Government Code § 2253.074, TX GOVT § 2253.074
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Property Code (Refs & Annos)
    Title 10. Miscellaneous Beneficial Property Interests
      Subtitle B. Fiduciaries
        Chapter 162. Construction Payments, Loan Receipts, and Misapplication of Trust Funds
          Subchapter A. Construction Payments and Loan Receipts (Refs & Annos)

V.T.C.A., Property Code § 162.001

§ 162.001. Construction Payments and Loan Receipts as Trust Funds

Effective: September 1, 2009
Currentness

(a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

(b) Loan receipts are trust funds under this chapter if the funds are borrowed by a contractor, subcontractor, or owner or by an officer, director, or agent of a contractor, subcontractor, or owner for the purpose of improving specific real property in this state, and the loan is secured in whole or in part by a lien on the property.

(c) A fee payable to a contractor is not considered trust funds if:

(1) the contractor and property owner have entered into a written construction contract for the improvement of specific real property in this state before the commencement of construction of the improvement and the contract provides for the payment by the owner of the costs of construction and a reasonable fee specified in the contract payable to the contractor; and

(2) the fee is earned as provided by the contract and paid to the contractor or disbursed from a construction account described by Section 162.006, if applicable.

(d) Trust funds paid to a creditor under this chapter are not property or an interest in property of a debtor who is a trustee described by Section 162.002.

**Credits**
Acts 1983, 68th Leg., p. 3720, ch. 576, § 1, eff. Jan. 1, 1984. Amended by Acts 1997, 75th Leg., ch. 1018, § 1, eff. Sept. 1, 1997; Acts 2009, 81st Leg., ch. 1277, §§ 1, 2, eff. Sept. 1, 2009.

Notes of Decisions (74)

V. T. C. A., Property Code § 162.001, TX PROPERTY § 162.001
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 11. Trial of Causes
        G. Findings by the Court

TX Rules of Civil Procedure, Rule 296

Rule 296. Requests for Findings of Facts and Conclusions of Law

Currentness

In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law. Such request shall be entitled "Request for Findings of Fact and Conclusions of Law" and shall be filed within twenty days after judgment is signed with the clerk of the court, who shall immediately call such request to the attention of the judge who tried the case. The party making the request shall serve it on all other parties in accordance with Rule 21a.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of March 19, 1957, eff. Sept. 1, 1957; June 10, 1980, eff. Jan. 1, 1981; Dec. 5, 1983, eff. April 1, 1984; April 24, 1990, eff. Sept. 1, 1990.

Notes of Decisions (1784)

Vernon's Ann. Texas Rules Civ. Proc., Rule 296, TX R RCP Rule 296
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

| Vernon's Texas Rules Annotated |
| --- |
|   Texas Rules of Civil Procedure |
|     Part II. Rules of Practice in District and County Courts |
|       Section 11. Trial of Causes |
|         G. Findings by the Court |

TX Rules of Civil Procedure, Rule 297

Rule 297. Time to File Findings of Fact and Conclusions of Law

Currentness

The court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed. The court shall cause a copy of its findings and conclusions to be mailed to each party in the suit.

If the court fails to file timely findings of fact and conclusions of law, the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties in accordance with Rule 21a a "Notice of Past Due Findings of Fact and Conclusions of Law" which shall be immediately called to the attention of the court by the clerk. Such notice shall state the date the original request was filed and the date the findings and conclusions were due. Upon filing this notice, the time for the court to file findings of fact and conclusions of law is extended to forty days from the date the original request was filed.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of June 10, 1980, eff. Jan. 1, 1981; Dec. 5, 1983, eff. April 1, 1984; April 24, 1990, eff. Sept. 1, 1990.

Notes of Decisions (251)

Vernon's Ann. Texas Rules Civ. Proc., Rule 297, TX R RCP Rule 297
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

---

    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 11. Trial of Causes
        H. Judgments

TX Rules of Civil Procedure, Rule 301

Rule 301. Judgments

Currentness

The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that has no support in the evidence. Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law. Judgment may, in a proper case, be given for or against one or more of several plaintiffs, and for or against one or more of several defendants or intervenors.

**Credits**
Oct. 29, 1940, eff. Sept. 1, 1941. Amended by order of July 15, 1987, eff. Jan. 1, 1988.

Notes of Decisions (2981)

Vernon's Ann. Texas Rules Civ. Proc., Rule 301, TX R RCP Rule 301
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Purchase Order

**DUDLEY CONSTRUCTION**

P. O. Number    10204-0218-010-M

11370 State Hwy 30 - College Station, Texas 77045
Tel. 979-776-2135    Fax 979-776-2235

| To: | Ship to (if different address): |
|---|---|
| Curt Murray<br>ACT Pipe and Supply<br>480 Stone City Drive<br>Bryan, Texas 77803<br>(979) 775-4144 Phone<br>(979) 775-4255 Fax | City of Bryan Tabor – 18th St. & N. Texas GW Storage Tanks (5 MG Site)<br>c/o Dudley Construction, Ltd.<br>200 East 18th Street<br>Bryan, Texas 77803 |

| P. O. DATE | PLACED BY | DATE EXPECTED | SHIP VIA | F.O.B. | TERMS |
|---|---|---|---|---|---|
| 09/14/2011 | Michael Ham | 09/23/2011 | Best Methods | Jobsite | Net 30 |

| QTY. | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 3 | 36" FLEX RESTRAINED COUPLING | $ 1,025.21 | 3,075.63 |
| 43 | 36" MEGA-LUG ACC SET FOR DI | $ 782.14 | 33,632.02 |
| 5 | 36" MJ BUTTERFLY VALVE | $ 7,183.58 | 35,917.90 |
| 7 | #562-S 24-36" ADJ VALVE BOX | $ 40.00 | 280.00 |
| 2 | 36" MJ TEE | $ 2,999.45 | 5,998.90 |
| 1 | 36" MJ 22.5 DEG ELL | $ 1,681.00 | 1,681.00 |
| 5 | 36" MJ 45 DEG ELL | $ 1,715.11 | 8,575.55 |
| 2 | 36" MJ 90 DEG ELL | $ 2,190.93 | 4,381.86 |
| 4 | 36" MJ SLEEVE | $ 1,430.00 | 5,720.00 |
| 1 | 36" X 30" CON REDUCER C110 | $ 4,655.83 | 4,655.83 |
| 2 | 36" 1/8" FF SST FLG ACC SET | $ 1,819.02 | 3,638.04 |
| 1 | 30" 1/8" FF SST FLG ACC SET | $ 1,192.88 | 1,192.88 |
| 1 | 30" FLG X FLG BUTTERFLY VALVE W/ HAND WHEEL | $ 5,767.61 | 5,767.61 |
| 1 | 30" 150# FLANGE INSULATION KIT | $ 125.61 | 125.61 |
| 1 | 30" RESTRAINED FLG COUPLING ADAPTER | $ 2,782.26 | 2,782.26 |
| 1 | 30" MJ 45 DEG ELL | $ 1,178.57 | 1,178.57 |
| 5 | 30" MEGA-LUG ACC SET FOR DI | $ 600.71 | 3,003.55 |
| 1 | 30" MJ Tee | $ 1,965.06 | 1,965.06 |
| 1 | 20" BLIND FLANGE | $ 254.15 | 254.15 |
| 1 | 20" FLANGE BOLT NUT GASKET SET, ZINC BOLTS AND NUTS, 1/8" FULL FACE | $ 102.37 | 102.37 |
| 8 | Roll - Poly Wrap | $ 112.09 | 896.72 |
| 72 | LF - 36" DI Pipe | $ 95.00 | 6,840.00 |
| 54.38 | LF - 30" DI Pipe | $ 74.53 | 4,052.94 |

** At this time we are not including the remainder of 36" Ductile Iron pipe because of the dispute over the type of pipe it should be. If the City of Bryan accepts the pipe that has already been delivered to the job then that pipe will be invoiced to the job @ the quoted price reflected above.

| | |
|---|---|
| SHIPPING & HANDLING | 0.00 |
| SUBTOTAL | 135718.45 |
| SALES TAX RATE | 0.00% |
| (No Sales Tax on Government Job) SALES TAX | 0.00 |
| TOTAL DUE | $ 135,718.45 |

_____
Authorized Signature

_____
Authorized Signature

The Vendor will sign this purchase order accepting t The Purchase order will then be fully executed and returned. to Dudley Construction, Ltd. at the above address.

Samples, brochures and shop drawings as specified to be transmitted to the contractor as soon as possible for approval before proceeding with fabrication. One (1) electronic copy.

DEFENDANT'S EXHIBIT

3